[No. 79064-7.    En Banc.]

Argued September 27, 2007.    Decided February 21, 2008.

*In the Matter of the Detention of* ALFRED E. KISTENMACHER,
*Petitioner.*

Peter B. Tiller (of The Tiller Law Firm), for petitioner.

Robert M. McKenna, Attorney General, and Melanie Tratnik, Assistant, for respondent.

¶1 CHAMBERS, J. — The Washington State Legislature has created a special civil commitment system for sexually violent predators, chapter 71.09 RCW. "At all stages of the proceedings," those facing civil commitment as sexually violent predators are "entitled to the assistance of counsel." RCW 71.09.050(1). We must decide whether a statutorily mandated precommitment psychological examination is a "proceeding" under this chapter. We hold that it is. We also hold that the error in the case before us was harmless and affirm the Court of Appeals on different grounds.

## FACTS

¶2 In 1996, Alfred Kistenmacher pleaded guilty to two counts of first degree rape of a child. His victims were two young sisters who lived next door. The older child was between eight and nine, the younger child was seven years old. Kistenmacher had been abusing the older girl for some

months. This abuse came to light after he digitally raped the younger girl.

¶3 While in prison, Kistenmacher reported that he had had a long history of sexual contact with children, starting from when he was a young child himself. His victims were mostly girls between the ages of 5 and 17. Kistenmacher also disclosed acts of exhibitionism, voyeurism, and masturbation with stolen underwear. Before Kistenmacher finished serving his sentence, the State filed a sexually violent predator petition against him.

¶4 Kistenmacher stipulated there was probable cause to find he was a sexually violent predator, and he was transferred to the Special Commitment Center (SCC) on McNeil Island. During an intake interview, Kistenmacher was given and signed an apparently standardized form titled "Notice of Evaluation as a Sexually Violent Predator." Clerk's Papers at 65. Among other things, this form contained a "Waiver of Attorney Presence." Kistenmacher checked the box next to the option on the form that said, "I request that my attorney be present during the clinical interview(s) for commitment as a Sexually Violent Predator." *Id.*

¶5 About two weeks later, Kistenmacher was evaluated by Dr. Harry Goldberg, PhD, a California forensic psychologist. Kistenmacher's counsel was not present. The record suggests counsel was not notified of the examination. It also suggests that Dr. Goldberg was not aware that counsel's presence had been requested. Before the examination, Dr. Goldberg gave Kistenmacher his own standardized consent form that did not mention any right to counsel. Kistenmacher did not ask for his lawyer. Instead, he signed the form and proceeded with the interview. Dr. Goldberg later testified that the presence of a third person would have interfered with his evaluation.

¶6 Prior to the examination, Dr. Goldberg had reviewed Kistenmacher's records. Among other things, these records detailed Kistenmacher's long history of nonadjudicated acts of sexual misconduct. During the clinical examination,

Kistenmacher confirmed all but two of these prior acts. After the examination, Dr. Goldberg diagnosed Kistenmacher with pedophilia and exhibitionism.

¶7 About six months later and about three weeks before trial, the State's attorney deposed Kistenmacher. Kistenmacher's counsel was present and the deposition was videotaped. Without objection from his counsel, Kistenmacher again detailed multiple incidents of sexual contact with children, rape, frottage, exhibitionism, and voyeurism. That videotaped deposition was played for the jury without objection.[1]

¶8 At trial, Kistenmacher unsuccessfully moved to suppress the testimony of Dr. Goldberg. The trial judge concluded that Kistenmacher did not have a right to counsel based on either the sexually violent predator statute or the constitution and that an erroneous form could not create such a right by estoppel. The trial court explicitly found that if a right existed, Kistenmacher did not waive it. The trial judge also found that Kistenmacher was not prejudiced by the denial of the motion to suppress Dr. Goldberg's testimony. Kistenmacher assigned error to that ruling.

¶9 Dr. Goldberg did testify about Kistenmacher's history and about his diagnosis and likelihood of reoffending. The record is not crystal clear as to what Dr. Goldberg based his opinions on. When asked the basis for his opinion, his answer suggests he was describing what he usually reviews in similar cases rather than what he specifically considered in Kistenmacher's case. Dr. Goldberg testified that he relied upon such things as records from prison treatment providers and legal records such as police reports, probation officer reports, and other materials provided by the State. Dr. Goldberg estimated he reviewed between 1,200 and 1,500 pages of materials. Dr. Goldberg also relied upon two actuarial tests (the Static 99 and the MnSOST-R (Minne-

---

[1] Kistenmacher did not attend his own trial. He asked to be transported back to the SCC, alluding to discomfort in the local jail.

sota Sex Offender Screening Tool))[2] and his own clinical examination in making his diagnosis.

¶10 Much of Dr. Goldberg's testimony recapitulated Kistenmacher's own videotaped deposition that was played for the jury. Dr. Goldberg also testified that Kistenmacher was "likely to reoffend in a sexual predatory manner violently." 3 Verbatim Report of Proceedings (VRP) at 95. Kistenmacher offered the testimony of his own clinical psychologist, Dr. Theodore Donaldson. Dr. Donaldson had also examined Kistenmacher and concluded ("with some degree of uncertainty") that he suffered from a mental abnormality, but that he was not dangerous because of his age, 63. 4 VRP at 77-78, 84.

¶11 The jury concluded that Kistenmacher was a sexually violent predator. The Court of Appeals affirmed. *In re Det. of Kistenmacher,* 134 Wn. App. 72, 138 P.3d 648 (2006). We granted review. *In re Det. of Kistenmacher,* 159 Wn.2d 1019, 157 P.3d 404 (2007).

RIGHT TO COUNSEL

¶12 We turn first to whether there is a statutory right to counsel at sexually violent predator forensic examinations under chapter 71.09 RCW.[3] This is a question of law and our review is de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). The primary goal of statutory interpretation is the determination of legislative intent. *In re Pers. Restraint of Young,* 122 Wn.2d 1, 48, 857 P.2d 989 (1993) (citing *Anderson v. O'Brien,* 84 Wn.2d 64, 67, 524 P.2d 390 (1974)). In most relevant part, chapter 71.09 RCW says:

---

[2] An actuarial test "uses an equation, a formula, a graph, or an actuarial table to arrive at a probability, or expected value, of some outcome" as opposed to a clinical test, which uses "an informal, 'in the head,' impressionistic, subjective conclusion, reached (some-how) by a human clinical judge." William M. Grove & Paul E. Meehl, *Comparative Efficiency of Informal (Subjective, Impressionistic) and Formal (Mechanical, Algorithmic) Prediction Procedures: The Clinical-Statistical Controversy,* 2 PSYCHOL. PUB. POL'Y & L. 293, 294 (1996).

[3] Whether there is a constitutional right to counsel at the examination is not before us.

> At all stages of the proceedings under this chapter, any person subject to this chapter shall be entitled to the assistance of counsel.

RCW 71.09.050(1). The chapter's definition section does not define "proceedings." *See* RCW 71.09.020. Eight years ago, this court examined RCW 71.09.050(1) in the context of the postcommitment annual examinations that SCC residents undergo. We acknowledged:

> This language, by referring to "all stages of the proceedings," rather than just to "proceedings," seems broad enough to include the annual evaluations.
>
> But the Legislature created the right to counsel only as to all stages *leading to* the initial trial of whether the person is a sexually violent predator, and not to further proceedings.

*In re Det. of Petersen*, 138 Wn.2d 70, 92, 980 P.2d 1204 (1999) (emphasis added). We noted in *Petersen* that not only does the chapter create a right to counsel for the proceedings leading up to the commitment trial, it also grants a right to counsel if a committed person petitions for release or for less restrictive alternatives. *Id.*; *see also* RCW 71.09.090(2). We concluded that the second grant of the right to counsel would be surplusage if the right to counsel granted by RCW 71.09.050 continued through every statutory stage. *Petersen,* 138 Wn.2d at 92.

¶13 Our language in *Petersen* supports, but does not compel, a conclusion that the statutory right to counsel extends to the pretrial examination. Again, the statute creates a right of counsel at "all stages of the proceedings." RCW 71.09.050(1). There are only three specific events set forth in the chapter that the legislature might have explicitly considered to be "proceedings." First, the probable cause hearing. RCW 71.09.040(2). Second, the statutorily mandated examination. RCW 71.09.040(4). Finally, the trial itself. RCW 71.09.050. It seems unlikely to us that the legislature would have used the broad term "proceedings" if it meant to exclude the statutorily mandated examination mentioned in the very same statute.

¶14 The State directs our attention to the different treatment of psychological examinations in other legal arenas. In the general civil commitment statutory schema, the legislature has explicitly created a right for the presence of an attorney (or other advocate) during the admitting psychological examination. Former RCW 71.05.150(1)(c) (1998) ("An attorney . . . shall be permitted to be present."). Chapter 71.09 RCW is not nearly so explicit, and the State argues that this is evidence that no statutory right exists.

¶15 Turning to other rights-depriving laws, by statute, parents facing a child dependency or termination action are entitled to counsel at all stages of proceedings. RCW 13-.34.090. In such cases, a court may order a psychological examination of the child's parents. *See, e.g., In re Dependency of J.R.U.-S.*, 126 Wn. App. 786, 110 P.3d 773 (2005). The Court of Appeals held that there was no statutory (or constitutional) right to counsel's presence at a court ordered psychological examination. *Id.* at 794, 802.

¶16 The Court of Appeals in *J.R.U.-S.* based its conclusion less on the statutory text and more on its evaluation of the overarching dependency scheme. Parents facing termination or restriction of their parental rights are often ordered by the court to do many things. *Id.* at 802. The Court of Appeals concluded that if every court ordered act was a proceeding, it would lead to absurd results (not to mention a huge drain on state funded dependency counsel). *Id.*

¶17 The statutory schemes governing child dependency actions and sexually violent predator proceedings are quite different from one another. *Compare* ch. 13.34 RCW *with* ch. 71.09 RCW; *cf. State v. Hutchinson,* 111 Wn.2d 872, 884, 766 P.2d 447 (1989). For one thing, those subject to commitment as sexually violent predators are statutorily *required* to undergo a psychological examination. RCW 71-.09.040(4). Parents facing possible termination of their parental rights are not. *See* ch. 13.34 RCW. More importantly, the chapters serve different goals. Chapter 13.34 RCW seeks to protect families "unless a child's right to conditions

of basic nurture, health, or safety is jeopardized." RCW 13.34.020. The State provides services to parents in an attempt to avoid breaking up those families. RCW 13-.34.025; *see also* ch. 74.14A RCW (children and family services); ch. 74.14C RCW (family preservation services). These services can easily include months of counseling and supervised visits. *See* RCW 74.14C.020. The primary purpose of chapter 71.09 RCW is to protect the public. RCW 71.09.010. No such preadjudication services are necessarily provided, and chapter 71.09 RCW to some extent mimics the proceedings necessary for criminal convictions before an offender may be committed. Finally, and strikingly, there are only three events in the sexually violent predator statute that could be deemed "proceedings"—the probable cause hearing, the evaluation, and the trial. RCW 71.09-.040, .050. There are a myriad of possible proceedings under the child dependency statutes. *Cf. J.R.U.-S.*, 126 Wn. App. at 802 (alluding to appointments, visitations, and other dispositional activities). The Court of Appeals certainly may have been right that providing counsel at every court ordered event in a termination or dependency action would be absurd just from the potential number of events. No such numerical absurdity appears here.

■ ¶18 *Petersen* held that the statutory right to counsel at "all stages of the proceedings" did not include *post*commitment psychological examinations, but might include *pre*commitment examinations. *Petersen*, 138 Wn.2d at 92. We agree and conclude the plain language of the statute and the structure of the sexually violent predator act gave Kistenmacher a statutory right to counsel at his precommitment psychological examination.[4]

## RELIEF

■ ¶19 We turn now to whether Kistenmacher is entitled to relief for the State's violation of his statutory right

---

[4] Of course, the legislature is welcome to amend the act to clarify its intent, if providing counsel at the examination was not its intention.

to counsel. Kistenmacher argues that Dr. Goldberg's testimony should have been excluded, and, since it was not, the proper thing for us to do is vacate the jury's verdict and order a new trial. He contends that no other approach would meaningfully protect his rights. The State argues that any error was harmless.

¶20 We agree with the State. We note that Kistenmacher did have counsel at the time of the examination, and nothing in the record before us leads us to believe that the State took any steps to prevent counsel's presence at the examination. Instead, the record leads us to conclude that counsel would have been allowed to attend, but he was simply not told of it. *E.g.,* 1 VRP at 20-21.[5] While we do not hold that Kistenmacher had to do more to assert his statutory right to counsel than he did, we do note that he proceeded with the examination without informing Dr. Goldberg that he wanted or expected his attorney to be present. Our analysis might be different had Kistenmacher told the doctor he wanted his attorney.

¶21 We conclude that the extreme remedy of reversal is inappropriate without some showing that the error was actually prejudicial and harmful or that the State willfully ignored the law. *Cf. Kotteakos v. United States*, 328 U.S. 750, 760, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946); *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981); *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

¶22 We now consider whether the error was harmful. Since Kistenmacher had no right to remain silent during the examination, counsel's role would have been limited. *Cf. Young,* 122 Wn.2d at 51 (citing *Allen v. Illinois,* 478 U.S. 364, 375, 106 S. Ct. 2988, 92 L. Ed. 2d 296 (1986)). Suppression of inculpatory statements might be a reason-

---

[5] During argument on the suppression motion, Kistenmacher's counsel stated, "Nobody from SCC called and said when and where the evaluation was taking place. I learned after the fact." 1 VRP at 20-21. Perhaps because counsel did not submit a sworn declaration, the trial court's order does not mention this. Counsel for the State repeatedly stated at oral argument that the State would not have prevented counsel from attending, and we take her at her word.

able remedy for violation of statutory rights. *Cf. State v. Schulze*, 116 Wn.2d 154, 164, 804 P.2d 566 (1991). But Kistenmacher does not direct us to any information that Dr. Goldberg obtained in the clinical examination that was not available from the records the doctor reviewed, the actuarial tests, and/or Kistenmacher's deposition in the presence of counsel. Nor do we find any such statements ourselves. If Kistenmacher, without assistance of counsel, had made inculpatory admissions to Dr. Goldberg, suppression of those statements or even Dr. Goldberg's testimony might well be the appropriate remedy. *Cf. id.*; *City of Spokane v. Kruger*, 116 Wn.2d 135, 137, 146, 803 P.2d 305 (1991).

¶23 But Kistenmacher made essentially the same admissions in the presence of counsel, and the videotape of that deposition was played to the jury without objection. Even if Dr. Goldberg had declined to examine Kistenmacher in the presence of counsel, we have no reason to think his testimony would have been different. It is perhaps true that Dr. Goldberg's testimony would be given more credibility having personally examined Kistenmacher, but the failure to perform a clinical examination would have gone to the weight, not the admissibility, of Dr. Goldberg's testimony. Kistenmacher's own expert testified that he suffered from a mental abnormality.

¶24 Assuming the appropriate remedy is to strike those portions of Dr. Goldberg's testimony that were based on information Kistenmacher would not have disclosed in the presence of counsel, Kistenmacher has not shown he is entitled to relief. He has made no effort to show that Dr. Goldberg's testimony would be different in any respect had his lawyer been given notice of, and had been present at, the examination. "[E]rror is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." *Cunningham*, 93 Wn.2d at 831 (citing *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159 (1974)). We conclude the error was harmless.

■ ¶25 For much the same reason, we find Kistenmacher's collateral estoppel argument unpersuasive. We certainly do not countenance the State leading a man to believe counsel would be present at an examination without informing counsel. But to prevail on an estoppel claim, Kistenmacher must establish by clear, cogent, and convincing evidence three things: (1) that the language on the intake form was "an admission, statement or act" that was inconsistent with the State's later acts; (2) that he reasonably relied on the State's earlier actions; and (3) that he would be injured if this court allows the State to repudiate the intake form. *See Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998) (citing *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994)). Kistenmacher has shown neither reliance nor injury.

## CONCLUSION

¶26 Accordingly, we affirm the courts below and affirm Kistenmacher's commitment as a sexually violent predator.

C. JOHNSON, OWENS, and J.M. JOHNSON, JJ., concur.

■ ¶27 FAIRHURST, J. (concurring) — I concur in the result and with the majority's analysis that there is no estoppel against the State. I write separately because I do not agree that the sexually violent predator (SVP) act, chapter 71.09 RCW, creates a statutory right to counsel at precommitment psychological evaluations. The plain language of the statute is ambiguous, and application of the canons of statutory construction does not support a right to counsel at these psychological evaluations.

¶28 Chapter 71.09 RCW was enacted to remedy the inadequate ability of Washington's civil commitment system to handle the risks associated with sexually violent predators. RCW 71.09.010. RCW 71.09.030 provides:

When it appears that: (1) A person who at any time previously has been convicted of a sexually violent offense is about to be

released from total confinement . . . and it appears that the person may be a sexually violent predator, the prosecuting attorney of the county where the person was convicted or charged or the attorney general if requested by the prosecuting attorney may file a petition alleging that the person is a "sexually violent predator" and stating sufficient facts to support such allegation.

When this petition is filed, the alleged SVP is afforded a probable cause determination, RCW 71.09.040(1)-(3), "an evaluation as to whether the person is a sexually violent predator," RCW 71.09.040(4), and "a trial to determine whether the person is a sexually violent predator." RCW 71.09.050(1).

¶29 RCW 71.09.050(1) states:

Within forty-five days after the completion of any hearing held pursuant to RCW 71.09.040, the court shall conduct a trial to determine whether the person is a sexually violent predator. The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced. At all stages of the proceedings under this chapter, any person subject to this chapter shall be entitled to the assistance of counsel, and if the person is indigent, the court shall appoint counsel to assist him or her. The person shall be confined in a secure facility for the duration of the trial.

A.  The meaning of "stages of the proceedings" in RCW 71.09.050(1) is ambiguous

¶30 " 'A court's objective in construing a statute is to determine the legislature's intent.' " *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 909, ¶ 11, 154 P.3d 882 (2007) (quoting *Tingey v. Haisch*, 159 Wn.2d 652, 657, ¶ 8, 152 P.3d 1020 (2007)). " '[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Tingey*, 159 Wn.2d at 657, ¶ 8). "Plain meaning is 'discerned from the

ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Id.* (quoting *Tingey*, 159 Wn.2d at 657, ¶ 8). A court must, when possible, "give effect to every word, clause and sentence of a statute." *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985). However, "[i]f the statutory language remains susceptible to more than one reasonable interpretation, the statute is considered ambiguous, and the court may then employ statutory construction tools, including legislative history, for assistance in discerning legislative intent." *Udall*, 159 Wn.2d at 909.

¶31 The majority discerns from dicta in *In re Detention of Petersen*, 138 Wn.2d 70, 92, 980 P.2d 1204 (1999) that "all stages of the proceedings" was to be read broadly and thus encompasses these evaluations. However, "stages of proceedings" must be read in light of definitions of "proceeding." While *Webster's Third New International Dictionary* 1807 (2002) defines "proceeding" as "a particular step or series of steps adopted for doing or accomplishing something," it also defines "proceedings" as "a particular action at law or case in litigation." Similarly, while *Black's Law Dictionary* 1241 (8th ed. 2004) defines "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment," it also defines "proceeding" as "[t]he business conducted by a court; . . . a hearing." As evidenced from the dictionary definitions of "proceedings," the statute may be considered ambiguous, and we must turn to canons of statutory construction to discern legislative intent.

B. "Stages of the proceedings" does not include psychological evaluations given the statute's meaning when interpreted through canons of statutory construction

1. *Noscitur a sociis*

¶32 First, under the doctrine of noscitur a sociis, we should read "stages of the proceedings" to mean legal pro-

ceedings under this chapter. Under that doctrine, "a single word in a statute should not be read in isolation" and " 'the meaning of words may be indicated or controlled by those with which they are associated.' " *State v. Roggenkamp*, 153 Wn.2d 614, 623, ¶ 14, 106 P.3d 196 (2005) (internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)). The phrase "stages of the proceedings" does not appear within any generalized section of the SVP act. Rather, the phrase is found in the section of the act titled "Trial—Rights of parties." RCW 71.09.050 (boldface omitted). The language leading up to the phrase speaks of procedures *at trial*. *Id.* The language after the phrase speaks specifically of confinement *at trial*. *Id.* Thus, the phrase "stages of the proceedings" should be read in light of the surrounding language to apply to all stages of legal proceedings.

2. *Reading "proceedings" broadly would render other language as superfluous*

¶33 Second, reading RCW 71.09.050(1) to include more than legal proceedings would render other portions of the SVP act superfluous. It is a long-standing principle that we will not interpret a statute so as to render other language within the statute superfluous. *See Lakemont Ridge Homeowners Ass'n v. Lakemont Ridge Ltd. P'ship*, 156 Wn.2d 696, 699, ¶ 5, 131 P.3d 905 (2006). This court has previously held that the language found in RCW 71.09.050(1) is not as broad as petitioner reads it. *Petersen* involved an evaluation of whether an SVP had a right to counsel at an annual postcommitment psychological evaluation. 138 Wn.2d at 91. Petersen had argued that the postcommitment psychological evaluation was a proceeding falling under RCW 71.09.050(1), and he was entitled to have counsel present for that evaluation. *Petersen*, 138 Wn.2d at 92. This court rejected that argument, stating:

Later, in RCW 71.09.090(2), the Legislature created another statutory right to counsel when a committed person petitions for release or less onerous confinement. If RCW 71.09.050(1)

180

truly represents the overarching statutory grant of the right to counsel at all stages of proceedings under the entire chapter, the grant of the right to counsel in the latter section is surplusage. Under the usual rule of statutory construction, "[c]ourts should not construe statutes to render any language superfluous." *State v. Riles,* 135 Wn.2d 326, 340, 957 P.2d 655 (1998). Thus, in the absence of a constitutional right or a clear declaration from the Legislature, a committed person is not entitled to counsel during the annual evaluations.

*Id.* (alteration in original). Similarly, if we read RCW 71.09.050(1) to include all proceedings, rather than legal proceedings, then the language explicitly granting a right to counsel at the precommitment probable cause hearing found in RCW 71.09.040(3) would be rendered superfluous. Thus, I disagree with the majority's expansive reading of RCW 71.09.050(1) and would instead hold that it is limited to legal proceedings.

3.  *Expressio unius est exclusio alterius*

¶34 Third, application of the doctrine expressio unius est exclusio alterius does not permit a construction of stages of the proceedings as anything other than legal. Under the doctrine, " '[l]egislative inclusion of certain items in a category implies that other items in that category are intended to be excluded.' " *Landmark Dev., Inc. v. City of Roy,* 138 Wn.2d 561, 571, 980 P.2d 1234 (1999) (quoting *Bour v. Johnson,* 122 Wn.2d 829, 836, 864 P.2d 380 (1993)). Chapter 71.09 RCW provides three things that must happen postfiling before a person may be classified as an SVP: (1) the person must be given a probable cause hearing, RCW 71.09.040(1)-(3); (2) if probable cause is found, the person must undergo a psychological evaluation, RCW 71.09-.040(4); and (3) after the psychological evaluation, and regardless of the result of the evaluation, the person must be afforded a jury trial. RCW 71.09.050.

¶35 In regard to the probable cause hearing, the legislature expressly stated, "[a]t the probable cause hearing, the person shall have the following rights . . . (a) To be repre-

sented by counsel." RCW 71.09.040(3). Similarly, the language of RCW 71.09.050(1) is included in the section titled "Trial—Rights of parties." (Boldface omitted.) However, no such similar language was included in RCW 71.09.040(4). The legislature expressly placed the entitlement to have an attorney present within the section involving the probable cause hearing and within the section annunciating rights at trial. We should not read into the language of RCW 71.09.040(4) that it also intended to provide a right to an attorney at a psychological evaluation where none was expressly granted.

### 4. *Absurd results*

¶36 Finally, the majority's interpretation of the statute would lead to absurd results. In *In re Dependency of J.R.U.-S.*, 126 Wn. App. 786, 801, ¶ 29, 110 P.3d 773 (2005), Division One of the Court of Appeals considered RCW 13.34.090(2) and whether parents in dependency proceedings had the right to counsel at court-ordered psychological evaluations under RCW 13.34.090(2). RCW 13.34.090(2) provides, in relevant part, "*At all stages of a proceeding* in which a child is alleged to be a dependent, the child's parent, guardian, or legal custodian *has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court.*" (Emphasis added.) The parents argued that because the evaluations were statutorily authorized, they were a " 'stage' of the proceedings" within the meaning of the statute. *J.R.U.-S.*, 126 Wn. App. at 801, ¶ 29.

¶37 The court concluded that "[a] psychological evaluation is not a 'proceeding' or 'stage' of the proceedings." *Id.* at 802, ¶ 30. In analyzing the right to counsel in *J.R.U.-S.*, this court stated:

> For the first time on appeal, the parents contend they had a right to counsel under RCW 13.34.090(2). That statute provides that a parent in dependency proceedings has the right to counsel "[a]t all stages" of the proceeding. The parents argue that because the evaluations were statutorily authorized, they

were a "stage" of the proceedings within the meaning of RCW 13.34.090(2). We disagree.

A psychological evaluation is not a "proceeding" or "stage" of the proceedings. It is one of the dispositional services ordered by the court. If the evaluation were considered a "stage" of the proceedings, then parents would have a right to counsel at every counseling appointment, every visit with their children, and every other dispositional activity in a dependency case. *The parents' interpretation of the statute leads to absurd results, and we reject it.*

*J.R.U.-S.*, 126 Wn. App. at 801-02, ¶¶ 29-30 (emphasis added) (alteration in original) (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (courts must avoid absurd results when interpreting statutes)).[6]

---

[6] Other statutes and rules lend support that stage of proceedings is only to include legal proceedings. RCW 42.40.040(9)(b) provides that depositions can be ordered at any stage of the proceedings in whistleblower actions. It would be absurd in this case to assume the legislature intended to allow for the taking of depositions unless it was in the context of a legal proceeding. CrR 3.1(b)(2) provides, "[a] lawyer shall be provided at every stage of the proceedings, including sentencing, appeal, and post-conviction review." Under the doctrine of ejusdem generis, the statute should be interpreted to mean legal proceedings, as those are the types of proceedings specifically enumerated by the legislature.

Case law utilizing the term "stages of proceedings" similarly lends support that "stage of proceedings" only includes legal proceedings. *Washington Beauty College, Inc. v. Huse*, 195 Wash. 160, 80 P.2d 403 (1938), was a challenge to a state statute regulating the beauty industry. This court did not have jurisdiction to hear the case, but the college argued that because Huse did not challenge its right to sue, the court could waive jurisdictional requirements. The court, in holding that the jurisdiction argument was not waived, quoted former Rem. Rev. Stat. § 263, which provided:

"If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, *excepting always the objection that the court has not jurisdiction*, or that the complaint does not state facts sufficient to constitute a cause of action, which objection can be made at any stage of proceedings, either in the superior or supreme court."

*Wash. Beauty Coll.*, 195 Wash. at 166. It would be absurd if an objection to jurisdiction, which could be made at any stage of the proceedings, would apply to anything other than legal proceedings. *See also Gertz v. Am. Disc. Corp.*, 47 Wn.2d 694, 699, 289 P.2d 369 (1955) (objection to sufficiency of the complaint may be raised at any stage of the proceedings, thus denoting legal proceedings); *Joyner v. City of Seattle*, 144 Wash. 641, 258 P. 479 (1927) (objection to sufficiency of an affirmative defense can be raised at any stage of the proceedings, thus denoting legal proceedings). To interpret "stage of the proceedings" as anything other than legal proceedings would be absurd.

¶38 Both RCW 13.34.090(2) and RCW 71.09.050(1) contain similar wording in that both provide a right to counsel at all stages of a proceeding. The majority's attempts to differentiate *J.R.U.-S.* are unconvincing. The majority states, "[t]he Court of Appeals in *J.R.U.-S.* based its conclusion less on the statutory text and more on its evaluation of the overarching dependency scheme." Majority at 172. That is not correct. With reference to RCW 13.34.090(2), the court did no analysis of the scheme, instead applying only the statutory interpretive canon that we do not interpret a statute so as to lead to absurd results. *J.R.U.-S.*, 126 Wn. App. at 801-02.[7]

¶39 The majority also attempts to distinguish *J.R.U.-S.* on the basis that the goals of chapter 13.34 RCW differ from those of chapter 71.09 RCW. Majority at 172. In essence, the majority argues that because the purpose of our State's SVP act is to "protect the public," and because the proceedings "mimic criminal proceedings," that more protection should be afforded a respondent. However, this is an argument to the constitutionality of conducting an SVP psychological evaluation without counsel—an argument that is not before this court.[8]

¶40 A proper reading of the statute does not provide support for a statutory right to counsel at anything other than a legal proceeding.

C. The majority's reading of the statute is contrary to this court's previous decision in *Petersen*

¶41 By holding that SVP respondents are entitled to have counsel present at a psychological evaluation, the majority

---

[7] The analysis of the statutory scheme in *J.R.U.-S.* was limited to whether there was a Fifth Amendment right to counsel at a psychological evaluation and whether that right was adequately protected with the scheme of RCW 26.44.053. *J.R.U.-S.*, 126 Wn. App. at 798-801.

[8] On May 15, 2007, Kistenmacher filed a supplemental brief of authority arguing a constitutional right to counsel at his precommitment evaluation. Those portions of the supplemental brief were stricken, as Kistenmacher had not raised the constitutional argument in his petition for review. Pursuant to RAP 13.7(b), this court "will review only the questions raised in the . . . petition for review and the answer."

ignores our previous decision in *Petersen*. In *Petersen*, we determined that an SVP had no right to counsel at an annual postcommitment psychological hearing. 138 Wn.2d at 92. The majority argues that the SVP precommitment psychological evaluation differs from a postcommitment evaluation. With this statement, I agree; however, I see that difference as weighing against a right to counsel at the precommitment evaluation. If this court does not require counsel at a postcommitment evaluation, the outcome of which can bar further proceedings[9] toward release from commitment, it is counterintuitive that we would require it in a situation where the evaluation holds less weight, as in a precommitment evaluation where a respondent still receives a jury trial to determine his status as an SVP.

D.  Conclusion

¶42  Because I would instead hold that the SVP act does not provide a right to counsel during a precommitment evaluation, I would affirm the Court of Appeals in whole on both its reasoning and result in this matter.

MADSEN, J., and BRIDGE, J. PRO TEM., concur with FAIR-HURST, J.

◼ ¶43 SANDERS, J. (concurring in part, dissenting in part) — I concur with the majority opinion when it holds "the plain language of the statute and the structure of the sexually violent predator act[10] gave Kistenmacher a statu-

---

[9] RCW 71.09.070 provides that a person is entitled to a yearly examination to which, under *Petersen*, a right to counsel does not attach. The Department of Social and Health Services (DSHS) utilizes that annual report to determine whether or not further commitment is warranted and whether or not DSHS recommends the case for review by the court. RCW 71.09.070. Even if the SVP files an independent petition for release with the court, the court "may rely exclusively upon the annual report prepared pursuant to RCW 71.09.070." RCW 71.09.090(2)(b). Thus, the annual evaluation may be solely used as a basis for continued commitment and is of more weight in the proceeding than in a precommitment case.

[10] Ch. 71.09 RCW.

tory right to counsel at his precommitment psychological examination." Majority at 173. However, I cannot agree the violation of Alfred Kistenmacher's right to counsel at his psychological examination constitutes harmless error. As such, I would reverse and remand for a new trial.

¶44 Depriving Kistenmacher of his right to counsel at his psychological examination is an error requiring a remedy. The lack of counsel at a psychological examination is structural and requires reversal. Even if the error were not structural, it was not harmless because Dr. Goldberg testified about the contents of the examination. This testimony used the exam to establish credibility for the diagnosis as well as to establish other facts and admissions. Since this testimony was significant, the error was not harmless.

¶45 The psychological exam is central to a sexually violent predator (SVP) trial and results in indisputably important evidence. Structural errors are those which create " 'defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). "Structural errors . . . are not subject to harmless error review." *State v. Frost*, 160 Wn.2d 765, 779, 161 P.3d 361 (2007) (citing *Fulminante*, 499 U.S. at 310). Instead structural errors are "subject to automatic reversal." *Neder*, 527 U.S. at 8. In the criminal context, deprivation of "the presence of counsel 'at a critical stage' "[11] constitutes structural error requiring reversal. *Bell v. Cone*, 535 U.S. 685, 695, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)). Although the SVP commitment proceeding is supposedly "civil," the deprivation of counsel at important junctures affects the frame-

---

[11] Critical stages are those "step[s] of a criminal proceeding, such as arraignment, that held significant consequences for the accused." *Bell*, 535 U.S. at 696. A psychological examination has significant consequences in an SVP hearing because the exam is central and vital to the outcome of the trial.

work of the trial where indefinite, perhaps lifelong, imprisonment is at issue.

¶46 The psychological examination is central to the SVP trial. As the majority points out, the psychological examination is one of only three major events in SVP commitment proceedings. Majority at 173. The exam is necessary to prove the defendant "suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility," an element to be proved for SVP commitment. RCW 71.09.020(16). The length of Dr. Goldberg's testimony, exceeded only by the defendant's videotaped deposition, shows the centrality of the psychological exam to the trial.

¶47 The examination also provides evidence vitally important to the trial's outcome. The psychological testimony may be determinative as jurors often give expert opinions disproportionate weight. " 'Once defendants are turned over to medical or psychiatric clinics for an analysis of their physical well-being and the condition of their psyche, the effective trial will be held there and not before the jury.' " *In re Det. of Williams*, 147 Wn.2d 476, 497, 55 P.3d 597 (2002) (Chambers, J., concurring) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 125, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964) (Douglas, J., dissenting in part)). This is because a psychiatrist's " 'report may either overawe or confuse the jury and prevent a fair trial.' " *Id.* (quoting *Schlagenhauf*, 379 U.S. at 125).

¶48 Even if the error was not structural, the deprivation of Kistenmacher's right to counsel could not be harmless. An error is harmless only if it is an "error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947). However, "it is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors." *State v. Robinson*, 24 Wn.2d 909, 917, 167 P.2d 986 (1946). Even so,

the majority attempts to deduce which evidence the jury found important, making "a tacit admission that an appellate court is necessarily engaging in fact-finding and thereby invading the province of the jury." Dennis J. Sweeney, *An Analysis of Harmless Error in Washington: A Principled Process*, 31 GONZ. L. REV. 277, 279 (1995).

¶49 Nor was the deprivation of Kistenmacher's right to counsel trivial. According to Dr. Goldberg the mere presence of a third party, like an attorney, can "interfere with the forensic evaluation process." 3 Verbatim Report of Proceedings (RP) at 12. However, the lawyer's role is sometimes to do exactly that, "interfere." At the very least the lawyer would have firsthand knowledge of how the exam was conducted so as to more effectively cross examine the State's star witness.

¶50 The majority argues the testimony based on the evaluation was harmless because the information gathered by Dr. Goldberg during the psychological examination was duplicative of information available from records or from Kistenmacher's videotaped deposition. Majority at 175. However, Kistenmacher's deposition was taken eight months after the exam. The information "revealed" at the deposition had been first revealed in the tainted exam and continued to carry the taint of that revelation. Moreover, Dr. Goldberg testified to several statements made by Kistenmacher during the course of the improper exam. These included verification of reported but nonadjudicated molestation incidents,[12] acknowledgment of sexual fantasies about children,[13] and additional information about his criminal convictions.[14] In an effort to bolster the credibility of his opinion and diagnosis, Dr. Goldberg testified the examination provides value in forming a diagnosis.[15] Between the additional information received and the addi-

---

[12] 3 RP at 26-34.

[13] 3 RP at 53.

[14] 3 RP at 36.

[15] 3 RP at 42.

tional credibility supplied by the examination, the examination was valuable to the State and, correspondingly, prejudicial to the defense. It went far beyond merely duplicating information gleaned from other reports.

¶51 I would hold the denial of Kistenmacher's right to counsel at his psychological examination was structural error. As a structural error it is not subject to harmless error review but instead requires automatic reversal. However, even if the deprivation of counsel at the psychological exam were subject to harmless error analysis, the error was not trivial or merely academic. Under either analysis Kistenmacher's commitment must be reversed and remanded for a new trial.

¶52 I therefore concur in part and dissent in part.

ALEXANDER, C.J., concurs with SANDERS, J.