FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE  MAR 0 8 2018

Fairhurst, C.J.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on March 8, 2018

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 94329-0 |
| Respondent, | |
| v. | EN BANC |
| CHARLES DAVID FLETCHER, | |
| Petitioner. | Filed  MAR 0 8 2018 |

GORDON McCLOUD, J.—If a criminal defendant is acquitted due to insanity, the judge must then decide what to do with him or her. An acquitted person who constitutes a substantial danger to others, or who presents a substantial likelihood of committing criminal acts jeopardizing public safety or security unless kept under further control of the court, other persons, or institutions, "shall" be committed under our state's involuntary commitment statute. RCW 10.77.110(1). If those safety concerns disappear, the insanity acquittee must be released. Either

the Department of Social and Health Services (DSHS) or the insanity acquittee may initiate the process for obtaining such release.

Charles David Fletcher was found not guilty by reason of insanity of assault and related crimes in 2013. The judge ordered him committed. Fletcher then initiated the process for obtaining release in 2015 by mailing a motion for release directly to the superior court judge. The court directed Fletcher to file with DSHS instead, and the Court of Appeals affirmed. We must now clarify how this self-petition process works. Specifically, we address (1) whether an insanity acquittee can petition the court for conditional release directly instead of applying indirectly through DSHS and (2) whether the insanity acquittee is entitled to legal counsel when seeking conditional release. We hold that the insanity acquittee may petition the court directly for conditional release. We further hold that he or she is entitled to legal counsel once a petition for conditional release is filed with the court or an application for release is submitted to DSHS. We therefore reverse the Court of Appeals and remand to the superior court for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

In 2013, Fletcher was acquitted by reason of insanity of assault, attempting to elude a pursuing police officer, and failing to remain at an accident scene.[1] Clerk's Papers (CP) at 4-5. The trial court then made findings and committed him. It set Fletcher's commitment term at the statutory maximum of 10 years, with 585 days credit for time served. CP at 5.

Two years later, Fletcher mailed to the superior court judge a letter with attached motions for conditional release and appointment of counsel, which we are treating as motions. In these motions and his corresponding cover letter, Fletcher explained that he was seeking early conditional release and requested appointment of counsel at public expense because he was indigent. CP at 10-14.

The trial judge responded to Fletcher's unfiled motion a few days later via letter. CP at 6. In that letter, the trial judge informed Fletcher that under RCW 10.77.150, "the first step in this process is for the patient to apply to the Secretary of DSHS (I presume this can be done at [the commitment hospital]) for a Conditional

---

[1] According to the signed statement from a responding officer at the crime scene, the charges relate to a 2011 incident where witnesses reported that Fletcher was on a roadway, trying to stab people inside their vehicles with a knife. When police officers responded, Fletcher fled the scene in his vehicle, hit several civilian cars with his vehicle, attempted to ram his vehicle into the responding officers' vehicles, and then crashed his vehicle into a utilities pole and a Subway restaurant. Notice of Appeal, *State v. Fletcher*, No. 33810-0-III, at 24-29 (Wash. Ct. App. Oct. 5, 2015) (statement of investigating officer).

3

Release." *Id.* The trial judge attached a copy of that statute. CP at 6-9. The trial judge further explained that "[o]nce that has happened, the court can consider whether a hearing is necessary and can consider appointment of a Public Defender." CP at 6.

Instead of submitting an application for conditional release to DSHS through the process described in RCW 10.77.150, Fletcher sought review of the trial judge's letter ruling in the Court of Appeals.[2] A panel of three Court of Appeals judges unanimously agreed that Fletcher was required to apply for conditional release through DSHS first. *See State v. Fletcher*, 198 Wn. App. 157, 163, 168-69, 392 P.3d 1161, *review granted*, 188 Wn.2d 1015, 396 P.3d 345 (2017). But the panel split on whether Fletcher's request for counsel should be granted. Specifically, they disagreed over the nature of Fletcher's request for appointed counsel. Two judges interpreted it as a request for assistance with filing an invalid direct petition to the superior court and held that Fletcher was not entitled to appointed counsel for such an invalid direct petition. *Id.* at 164. The dissenting judge, in contrast, interpreted Fletcher's request for appointed counsel as a motion for assistance with preparing

---

[2] Fletcher actually filed a notice of appeal, but a Court of Appeals commissioner determined that the trial judge's letter ruling was not appealable as a matter of right under RAP 2.2 and treated it as a request for interlocutory review under RAP 2.3 instead. Comm'r's Ruling, *State v. Fletcher*, No. 33810-0-III (Wash. Ct. App. Mar. 15, 2016). No one has challenged the commissioner's ruling on that point.

an administrative application to DSHS; he would have authorized the appointment of counsel for that purpose. *Id.* at 174.

Fletcher petitioned this court for discretionary review, which we granted. *Fletcher*, 188 Wn.2d 1015. Given the confusion surrounding the nature of Fletcher's pro se filings at the superior court, we address two issues: (1) whether an insanity acquittee can petition the superior court directly for conditional release under RCW 10.77.200(5) instead of applying indirectly through DSHS under RCW 10.77.150(1) and (2) whether the insanity acquittee is entitled to the assistance of counsel under RCW 10.77.020(1) for either procedural pathway.[3] The answer to both questions is yes, but the right to counsel does not attach until either document is filed.

---

[3] Ordinarily, we would not address whether an insanity acquittee is entitled to the assistance of counsel in the administrative process because Fletcher did not file an administrative application with DSHS. This case, however, arrives at this court under a unique procedural posture. The Court of Appeals commissioner granted discretionary review specifically to address whether Fletcher had a right to counsel in the administrative process. *Id.* The commissioner explained:

> Specifically, in Mr. Fletcher's motion to the superior court, he asked, not only for a hearing, but also for a public defender, appointed by the court, to represent him. He asserted that because he was currently detained at Eastern State Hospital, he had no income. The court did not rule on his request for counsel. But under RCW 10.77.020(1), a person subject to the provisions of RCW 10.77 is entitled to the assistance of counsel. Without counsel here, Mr. Fletcher had no one to assist him to apply to [DSHS] for conditional release, as the superior court directed him to do. Therefore, discretionary review of this matter is granted pursuant to RAP 2.3(b)(3).

*Id.* at 2-3 (footnote omitted).

5

ANALYSIS

Before committing a criminal defendant acquitted by reason of insanity, the trial court must find that the person is either a substantial danger to others or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security unless kept under further control of the court, other persons, or institutions. RCW 10.77.110(1). An examination must be conducted every six months to evaluate the need for continued commitment. RCW 10.77.140. If the court determines that the insanity acquitee no longer meets these prerequisites to involuntary commitment, the insanity acquittee must be released. *State v. Reid*, 144 Wn.2d 621, 630, 30 P.3d 465 (2001) (discussing circumstances for conditional and unconditional release).

The parties agree that an insanity acquittee may initiate the process for conditional release. The parties disagree about whether that self-petition process is limited by RCW 10.77.150(1) to administrative applications, or whether the insanity acquittee may also petition the superior court directly under RCW 10.77.200(5). The parties further dispute whether Fletcher is entitled to counsel under RCW 10.77.020(1) during the self-petition process.

6

I.    An Insanity Acquittee Can Choose between Petitioning the Court
Directly for Conditional Release or Applying Indirectly through DSHS

We have already stated in a prior case, *Reid*, that "an insanity acquittee is not required to first apply to the secretary for final discharge or conditional release." 144 Wn.2d at 629. Instead, "[h]e may . . . petition the court directly pursuant to [former] RCW 10.77.200(3) [(1998)]," now renumbered as RCW 10.77.200(5). *Id*; LAWS OF 2010; ch. 263, § 8..[4] Because the availability of a stand-alone, direct self-petition process was conceded in *Reid*, we did not engage in statutory analysis. Suppl. Br. of Resp't, *State v. Reid*, No. 70290-0, at 8 (Wash.), *reprinted in* 10 Briefs 144 Wn.2d (2001) ("Former RCW 10.77.200(3) (1998), under which Reid sought release, permitted the acquittee to petition directly to the superior court for final discharge or conditional release from the institution in which he or she is committed."). We conduct that analysis now and affirm that RCW 10.77.200(5) establishes a stand-alone, direct self-petition process.

---

[4] *Accord State v. Kolocotronis*, 34 Wn. App. 613, 619, 663 P.2d 1360 (1983) (recognizing that a petitioner "may directly petition the court for final discharge or conditional release pursuant to [former] RCW 10.77.200(3) [(1974)], thereby circumventing the necessity of authorization by the Secretary"); *State v. Kolocotronis*, 27 Wn. App. 883, 886, 620 P.2d 546 (1980) ("[Former] RCW 10.77.200(3) [(1974)] provides . . . that a petitioner without prior approval of the Secretary may go directly to the court to seek final discharge.").

Notably, the State does not argue that *Reid*'s statement that RCW 10.77.200(5) establishes a stand-alone, direct self-petition process was wrong.[5] Indeed, the State concedes that *Reid*'s statement is consistent with the plain language of RCW 10.77.200(5),[6] which says that "[n]othing contained in this chapter shall prohibit the patient from petitioning the court for release or *conditional release* from the institution in which he or she is committed." (Emphasis added.)

Moreover, *Reid*'s interpretation of RCW 10.77.200(5) as a stand-alone petitioning process that grants insanity acquittees direct access to the courts is consistent with what appears to be the legislature's intent.[7] Prior to 1973, an insanity acquittee seeking release from involuntary commitment had to obtain physician certification as a prerequisite for petitioning for release. Former RCW 10.76.070 (1972). In 1973, the legislature significantly overhauled the process for committing insanity acquittees and replaced the statutes with a new chapter, chapter 10.77 RCW.

---

[5] Wash. Supreme Court oral argument, *State v. Fletcher*, No. 94329-0 (Oct. 19, 2017), at 16 min., 55 sec. through 17 min., 8 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

[6] *Id.* at 14 min., 32 sec. through 16 min., 40 sec.

[7] The concurrence's criticism that our discussion of the legislative history surrounding RCW 10.77.200's statutory revisions strays from our canons of statutory interpretation is misplaced. We rely on that history to bolster the plain meaning of the statute, not "interpret" it.

LAWS OF 1973, 1st Ex. Sess., ch. 117. Under this new statutory scheme, physician certification was no longer a prerequisite to seeking conditional release. Instead, that prerequisite was replaced with a different prerequisite: a recommendation from the secretary of DSHS about whether release is merited. *Id.* §§ 15(1)-(2).

But the legislature limited the applicability of that filing prerequisite to non-habeas-corpus petitions. According to the legislature, "Nothing in this chapter shall prohibit a person committed from exercising a right presently available to him for obtaining release from confinement, including the right to petition for a writ of habeas corpus." *Id.* § 24. The legislature also included a second habeas corpus provision specifically related to final (rather than conditional) discharge. That provision said "Nothing contained in this chapter shall prohibit the patient from petitioning by writ of habeas corpus for final discharge." *Id.* § 20(3). Thus, a DSHS letter of recommendation was not expressly required with a habeas corpus petition but seemed to be required for other petitions.

The very next year, however, the legislature, at the House Judiciary committee's behest, amended the statutes governing release to clarify that it did not intend to bar direct petitions to the court for conditional release or to limit court petitions to only habeas corpus petitions. LAWS OF 1974, 1st Ex. Sess., ch. 198, § 16(3). The 1974 revisions made the following relevant changes to the second habeas

corpus provision:

> Nothing contained in this chapter shall prohibit the patient from petitioning ((by writ of habeas corpus)) the court for final discharge or conditional release from the institution in which he or she is committed. The issue to be determined on such proceeding is whether the ((patient)) petitioner is a substantial danger to ((himself or)) other persons ((and is not in need of)), or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.
>
> Nothing contained in this chapter shall prohibit the committed person from petitioning for release by writ of habeas corpus.

*Id.*

Although the legislature has not adopted a formal explanation for the 1974 amendment, legislative records show that at least one member of the 1974 House Judiciary Committee, then-representative Kenneth Eikenberry, was concerned (1) that requiring an insanity acquittee to obtain prior approval from DSHS before he or she could petition a court for release might violate that person's due process rights and (2) that the original 1973 provision authorizing only habeas corpus petitions might not be sufficient to avoid constitutional conflict. Letter from Kenneth Eikenberry, Assistant Minority Whip, at 5 (proposed amendment to SUBSTITUTE S.B. 3312, 43d Leg., 3d Ex. Sess. (Wash. 1974)) (on file with Wash. State Archives). Specifically, then representative Eikenberry noted:

> The reason for keeping this language in is that when by subsection (1) of Section 16, over on page 16 at the bottom of the page, *a bureaucrat is placed between a patient and the court in terms of the patient*

10

*applying to the court for discharge on the grounds stated in the statute, and the application of the court may not be made without the bureaucrat's approval, then there is a denial of access to the courts sufficient to render the statute unconstitutional unless there is a safety valve.* This was specifically held by the North Carolina Supreme Court on very similar language about a year and [a] half to two years ago.[8] The language which must be re-inserted provides that safety valve and *it is not sufficient for a writ of habeas corpus on the judicial habeas corpus grounds to be allowed because then the issue of whether the patient is a substantial danger is not tried out in the courts since the writ of habeas corpus ordinarily relates simply to constitutional and legally authorized custodial grounds and not to the substantive questions involved here.* Therefore, the language of (3) on page 17 must be re-inserted as I have earlier indicated. For the same reasons, after the word "corpus" on line 24, the words "on other grounds as well" should be inserted.

*Id.* (emphasis added). During the House Judiciary Committee hearing where the conditional release language was proposed and approved, then representative Eikenberry described the revisions as "suggesting a new kind of procedure" different from habeas corpus petitions. *Hr'g on S.S.B. 3312 Before H. Comm. on Judiciary* at 3, 43d Leg., 3d Ex. Sess. (Wash. Apr. 16, 1974) (statement of Representative Kenneth Eikenberry).

These statements show that the 1974 House Judiciary Committee was aware that it was creating a separate avenue by which an insanity acquittee could petition

---

[8] *In re Tew*, 280 N.C. 612, 618-19, 187 S.E.2d 13 (1972) (holding that due process requires a civilly committed person be provided an avenue by which he or she can challenge a state hospital's refusal to certify release).

11

the court directly for conditional release, though it is unclear whether the committee believed the administrative process under RCW 10.77.150(1) had to be pursued first.

But the statutory language of RCW 10.77.200(5) answers that question. It plainly states that a petitioner can seek conditional release directly from the court without first getting a recommendation from DSHS through the administrative process. RCW 10.77.200(5) provides that once the secretary is served with the petition that was filed with the court, "the secretary shall develop a recommendation." That directive implies a recommendation has not already been made. Yet, if we required the committed person to file an administration application under RCW 10.77.150(1) before filing a petition with the court under RCW 10.77.200(5), then that directive would be unnecessary and superfluous—because the secretary would have already developed and submitted such a recommendation to the court when it received the initial administrative application for release under RCW 10.77.150(1). *See* RCW 10.77.150(1) ("The secretary shall . . . forward to the court . . . the person's application for conditional release as well as the secretary's recommendations concerning the application and any proposed terms and conditions upon which the secretary reasonably believes the person can be conditionally released."). Because "the statute's meaning is plain on its face," we "must give

12

effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

And contrary to the Court of Appeals analysis, pursuing the administrative process first is not critical to correctly allocating burdens of proof in conditional release proceedings. *Fletcher*, 198 Wn. App. at 162. Our prior cases hold that when the secretary recommends an insanity acquittee's release, the State bears the burden of proving release is not appropriate. *State v. Platt*, 143 Wn.2d 242, 248, 19 P.3d 412 (2001). In contrast, when the secretary recommends that the insanity acquittee remain in custody and not be released, the insanity acquittee bears the burden of proving release is appropriate. *Id.* at 251; *see Reid*, 144 Wn.2d at 629. The critical factor determining who bears the burden of proof is therefore based on the content of the secretary's recommendation, not the existence of a preliminary administrative filing and process. Both the direct petition process and administrative process preserve this procedure: they require the secretary to provide a recommendation regarding the insanity acquittee's eligibility for release. RCW 10.77.150(1) (requiring that "[t]he secretary shall . . . forward to the court . . . the secretary's recommendations"), .200(5) (requiring that "[u]pon receipt of such petition, the secretary shall develop a recommendation . . . and provide the secretary's recommendation to all parties and the court").

We therefore hold—consistent with *Reid*, the statutory language, and legislature's intent—that "an insanity acquittee is not required to first apply to the secretary for final discharge or conditional release." 144 Wn.2d at 629. Instead, he or she may petition the court directly pursuant to RCW 10.77.200(5). Next, we address whether an insanity acquittee is entitled to the assistance of counsel in presenting such a request for conditional release to DSHS or the court.

II.    Insanity Acquittees Are Entitled to Assistance of Counsel "at Any and All Stages of the Proceedings," Which Includes the Presentation of His or Her Application or Petition for Conditional Release

RCW 10.77.020(1) provides that "[a]t *any and all stages of the proceedings* pursuant to this chapter, any person subject to the provisions of this chapter shall be entitled to the assistance of counsel, and if the person is indigent the court *shall* appoint counsel to assist him or her." (Emphasis added.) Fletcher argues that "any and all stages of the proceedings" means that an indigent insanity acquittee is entitled to counsel beginning at the prepetition and preapplication stage.[9] In contrast, the State argues that counsel must be appointed only after the State contests the person's eligibility for release at a legal proceeding in court.[10]

---

[9] Wash. Supreme Court oral argument, *supra*, at 34 min., 55 sec. through 36 min., 35 sec.

[10] *Id.* at 17 min., 33 sec. through 20 min., 1 sec.

14

We find that the legislature did not choose either of those diametrically opposed alternatives. Instead, we hold that RCW 10.77.020(1) requires the court to appoint counsel for an indigent insanity acquittee upon submittal of an administrative application to DSHS under RCW 10.77.150(1) or upon filing of a petition directly with the court under RCW 10.77.200(5).

### A. The Right to Counsel "at Any and All Stages of the Proceedings" Is Broad, but Does Not Include Every Moment of the Commitment Duration

RCW 10.77.020 grants insanity acquittees a right to counsel at "any and all stages of the proceedings" and "[a]ny time the defendant is being examined by court appointed experts or professional persons pursuant to the provisions of this chapter." RCW 10.77.020(1), (3). "Any and all stages of the proceedings" is indeed broad and all-encompassing language. But if it meant ongoing attorney representation throughout an insanity acquittee's commitment, as Fletcher suggests, then it would have been unnecessary for the legislature to list a separate right to counsel during mental health evaluations under subsection (3) because that right would already be covered as part of "any and all stages of the proceedings." To avoid rendering subsection (3) superfluous, we must interpret RCW 10.77.150(1) as creating a right to an attorney only during a "stage" of the "proceedings," but not throughout commitment, when there is no "proceeding" going on.

### B. The Right to Counsel Applies to Direct Petitions and Administrative Applications for Conditional Release Because Both Involve "Stages" of the "Proceedings"

The parties agree that the term "proceedings" includes legal proceedings before the court. Indeed, even our most restrictive reading of the term "proceedings" in other statutory contexts have always included legal court proceedings. *Compare In re Det. of Kistenmacher*, 163 Wn.2d 166, 172-73, 178 P.3d 949 (2008) (lead opinion) (interpreting similar language under the civil commitment statutes for sexually violent predators broadly to encompass precommitment evaluations), *and id.* at 184-85 (Sanders, J., concurring/dissenting) (same), *with id.* at 179 (Fairhurst, J., concurring) (construing that language narrowly to apply only to legal proceedings); *see also In re Det. of Petersen*, 138 Wn.2d 70, 92, 980 P.2d 1204 (1999) (noting similar right to counsel language is broad enough to encompass pre- and postcommitment matters). The right to counsel under RCW 10.77.020(1) therefore clearly applies to direct petitions to the court under RCW 10.77.200(5).

The State, however, contends that "proceedings" are limited to legal court proceedings even though the statute does not say that. This is contrary to the general rule that we will not read supposedly missing limiting language into a statute or rewrite that statute from the bench. *State v. Hennings*, 129 Wn.2d 512, 523-24, 919 P.2d 580 (1996).

16

It is also contrary to the legislative scheme, when read in context. First, RCW 10.77.150(1) does not exist in isolation—it exists only because a legal court proceeding necessarily follows. That is because RCW 10.77.150(1) directs the secretary to forward any application for conditional release to the court for consideration after the secretary has reviewed the application and provided recommendations. Second, it would be inconsistent with the legislature's intent to provide insanity acquittees with two procedural pathways for seeking conditional release if only one process—the one the State seeks to avoid—entitles the acquittee to the assistance of counsel. The administrative process makes it no easier for insanity acquittees to obtain release than the court process; the same procedures apply to administrative applications as to direct petitions.[11]  *State v. Kolocotronis*, 34 Wn. App. 613, 623-24, 663 P.2d 1360 (1983). Thus, a rule requiring appointed counsel only for direct petitioners but not for administrative applicants would work against the State's position that insanity acquittees should follow the administrative process because that rule would encourage them to file direct petitions instead.

---

[11] Notably, however, under current precedent, direct petitioners might face a one-year time bar from repetitioning for conditional release, *Kolocotronis*, 34 Wn. App. at 622-24, whereas administrative applicants face only a six-month bar from reapplying for release, RCW 10.77.150(5).

17

### C. The "Proceeding" Is Triggered by the Filing of a Direct Petition or the Submission of an Administrative Application for Conditional Release

As discussed above, RCW 10.77.020(1) does not contemplate ongoing representation throughout an insanity acquittee's commitment. Instead, the right to counsel under that statute applies to the "stages" of a "proceeding." The filing of a direct petition or the submission of an administrative application for conditional release certainly constitute such "stages" of a "proceeding." Thus, once an insanity acquittee files a direct petition with the court under RCW 10.77.200(5) or submits an application to DSHS under RCW 10.77.150(1), a proceeding has commenced and he or she is entitled to an attorney under RCW 10.77.020(1).

The pro se petition or application does not have to address and prove each of the elements necessary for obtaining release. The right to counsel would be meaningless and inconsistent with the statutory scheme if we required an indigent, pro se insanity acquittee to fully explain or prove the prerequisites to release before providing him or her with an attorney. RCW 10.77.020 implies that the role of the attorney includes assisting the insanity acquittee in understanding the State's reasons for continuing his or her commitment, developing possible defenses against continued commitment, raising any circumstances in mitigation of continued commitment, and of course providing counsel on each of these points.

18

CONCLUSION

Following *Reid*, an insanity acquittee may petition the court directly for release under RCW 10.77.200(5) without first applying to DSHS under RCW 10.77.150(1). The insanity acquittee is also entitled to counsel under RCW 10.77.020(1) upon submittal of an application for conditional release to DSHS or the filing of a direct petition for conditional release with the court. We therefore reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.[12]

---

[12] We do not address the State's alternative argument that we should affirm the trial court's decision not to hear Fletcher's petition for conditional release because DSHS claims that it did not receive a copy of Fletcher's petition as required under RCW 10.77.200(5), even though Fletcher's letter to the court stated that he sent a copy to DSHS via the hospital where he is currently committed. Br. of Resp't at 11 n.5. The State raises a factual dispute regarding service that has not yet been considered by the superior court.

WE CONCUR:

No. 94329-0

FAIRHURST, C.J. (concurring)—I agree with the majority's resolution of this case, but I write separately to point out two areas where I believe the majority says more than is necessary. First, I think that RCW 10.77.200(5) is plain on its face and thus there is no need to consider other aids of construction. The relevant portion of RCW 10.77.200(5) states, "Nothing contained in this chapter shall prohibit the patient from petitioning the court for release or conditional release from the institution in which he or she is committed. The petition shall be served upon the court, the prosecuting attorney, and the secretary." Pursuant to our rules of statutory interpretation, we should resort to legislative history only if a statute is ambiguous. *State v. Armendariz*, 160 Wn.2d 106, 110-11, 156 P.3d 201 (2007). If the plain language of the statute is unambiguous, then our inquiry is at an end. *Id.* The majority does not follow our well established jurisprudence for statutory interpretation, and instead engages in an unnecessary review of the legislative history. Majority at 8-11. Though I agree with the majority's interpretation of the statute, the reliance on

the legislative history, even if only for purposes of bolstering, is misplaced. The letter from then representative Kenneth Eikenberry and his statements during the 1974 House Judiciary Committee hearing have no legal effect. *See* majority at 10-11; *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 461, 832 P.2d 1303 (1992) ("[T]he comments of a single legislator are generally considered inadequate to establish legislative intent.").

Second, I do not think the court should opine on when an insanity acquittee is entitled to counsel during an administrative hearing before the Department of Social and Health Services (DSHS). Majority at 18. Charles David Fletcher never submitted an application for conditional release to DSHS, so the issue is not properly before us. *Id.* at 3-4 (Fletcher mailed a letter to the superior court judge, not DSHS). The fact that the Court of Appeals commissioner explained that Fletcher had no one to assist him to apply to DSHS does not create an issue before us when the facts indicate otherwise. *Id.* at 5 n.3. If the issue were presented, I may not disagree with the majority, but I refrain from deciding that at this time. While deciding this issue, the majority also asserts that the same procedures apply to DSHS applications and direct petitions for conditional release. *Id.* at 17. Similarly, I refrain from deciding that at this time.

Fairhurst, C.J.

Johnson

Madsen, J