217 P.3d 1159 (2009)
In re the DETENTION OF John L. STRAND, Petitioner.
No. 80570-9.
Supreme Court of Washington, En Banc.
October 8, 2009.
*1161 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Petitioner.
Sarah Sappington, Office of The Attorney General, Seattle, WA, Kimberly Diane Frinell, Washington State Attorney General's Office Olympia, WA, for Respondents.
OWENS, J.
¶ At issue in this case is whether the sexually violent predator (SVP) statute, chapter 71.09 RCW, allows the State to perform "[a] current mental health evaluation" of a prisoner prior to the commencement of SVP commitment proceedings. RCW 71.09.025(1)(b)(v). Here, the State authorized the examination of John Strand in advance of his release from prison for purposes of providing "[a] current mental health evaluation" under RCW 71.09.025(1)(b)(v). Relying on documentary and testimonial evidence, as well as its expert's opinion, the State then petitioned to commit Strand pursuant to the SVP statute and was successful in doing so. Strand appealed, contending that the State could not conduct a mental health evaluation prior to the commencement of proceedings, that he had been denied access to counsel, and that it had not proved that his statements were made voluntarily. The Court of Appeals upheld his commitment. We affirm.

FACTS
¶ 2 In December 1992, Strand was convicted of first degree child molestation and resisting arrest in connection with an incident where he put his hands inside a four-year-old girl's underpants. Strand was given an exceptional sentence of 150 months and an additional 36 months in community placement.
¶ 3 Prior to Strand's scheduled release date of February 9, 2005, the State filed a petition alleging that Strand was an SVP as defined in chapter 71.09 RCW. This petition relied, in part, on a mental health evaluation that had been conducted "pursuant to RCW 71.09" by Dr. Kathleen Longwell on January 5, 2004. Clerk's Papers at 104. Prior to her evaluation of Strand, Dr. Longwell informed him that the interview was not confidential *1162 and that the information he volunteered to her could be used against him in an SVP commitment proceeding. Strand agreed to the evaluation and signed a consent form. Id.[1] During the evaluation, Dr. Longwell asked Strand about a number of unadjudicated sexual offenses which Strand was alleged to have committed. Strand denied any sexual misconduct, including the unadjudicated offenses and the first degree child molestation of which he was convicted. However, Strand did admit to having contact with the unadjudicated victims at the times and places described.
¶ 4 On May 16, 2005, the trial court found probable cause that Strand was an SVP. Strand did not object to Dr. Longwell's prefiling examination. On November 8, 2005, Dr. Longwell met with Strand with counsel present in accordance with the trial court's order directing an evaluation pursuant to RCW 71.09.040(4). At this time, Strand did not object to Dr. Longwell's pre- or postfiling examination.
¶ 5 Prior to trial, Strand sought to exclude the testimony of the unadjudicated victims, arguing that their testimony was irrelevant and prejudicial. In part based upon Strand's unintentional corroboration of the victims' accounts, the trial court determined that it was more likely than not that all but one of the unadjudicated offenses had taken place. After testimony from the unadjudicated victims and Dr. Longwell, Strand testified and again denied any sexual misconduct, but placed himself in the same location as each of the victims. On February 6, 2006, a jury found that Strand was subject to confinement as an SVP.
¶ 6 Strand appealed his commitment to the Court of Appeals, arguing that the State had no authority to examine him until after the probable cause hearing, that he was denied effective assistance of counsel, that his statements were involuntary and inadmissible, and that the loss of a portion of the verbatim trial transcript required reversal of his commitment. In re Det. of Strand, 139 Wash. App. 904, 162 P.3d 1195 (2007). The Court of Appeals affirmed Strand's commitment. Id. at 915, 162 P.3d 1195.
¶ 7 Strand petitioned this court for review. We granted review of two issues: whether a mental examination of Strand as a potential SVP is authorized prior to a judicial finding of probable cause and whether the trial court was required to determine if Strand's statements were voluntary before admitting them in the SVP proceeding. In re Det. of Strand, 163 Wash.2d 1022, 185 P.3d 1195 (2008).

STANDARD OF REVIEW
¶ 8 "Statutory construction is a question of law reviewed de novo." In re Det. of Martin, 163 Wash.2d 501, 506, 182 P.3d 951 (2008). Questions involving allegations of constitutional violations are also reviewed de novo. See, e.g., State v. Eckblad, 152 Wash.2d 515, 518, 98 P.3d 1184 (2004).

ANALYSIS
¶ 9 "This court has `steadfastly adhered to the rule that a litigant cannot remain silent as to claimed error during trial and later, for the first time, urge objections thereto on appeal.'" State v. Guloy, 104 Wash.2d 412, 421, 705 P.2d 1182 (1985) (quoting Bellevue Sch. Dist. No. 405 v. Lee, 70 Wash.2d 947, 950, 425 P.2d 902 (1967)). Strand failed to object to the use of Dr. Longwell's report and failed to assert that his statements were anything but voluntary either during the two years leading up to his trial or during his trial. As such, Strand may claim a new error only if he can show a "manifest error affecting a constitutional right." RAP 2.5(a).[2] Strand alleges three manifest constitutional errors: (1) that Dr. Longwell's prefiling evaluation was in violation of the SVP statute and therefore violated his due process rights, (2) that he was not provided with counsel during Dr. Longwell's prefiling evaluation, and (3) that he did not *1163 receive a hearing to determine the voluntariness of his prefiling statements.

I. Dr. Longwell's Examination of Strand Was Conducted within the Statutory Framework of Chapter 71.09 RCW

¶ 10 "[S]tate statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Vitek v. Jones, 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The "process due" to a person subject to an SVP petition is the procedure allocated by "the statute which authorizes civil incarceration." Martin, 163 Wash.2d at 511, 182 P.3d 951. Strand claims that his due process rights were violated when the State asked Dr. Longwell to examine him prior to the commencement of SVP proceedings, an examination he believes was unauthorized by the SVP statute.
¶ 11 The SVP statute, however, authorizes a prefiling psychological examination. RCW 71.09.025(1)(b) contains the pertinent statutory language: "The agency [with jurisdiction] shall provide the prosecuting agency with all relevant information including but not limited to the following information: . . . (iii) All records relating to the psychological or psychiatric evaluation and/or treatment of the person; . . . (v) A current mental health evaluation or mental health records review." RCW 71.09.025(1)(b).
¶ 12 At issue is whether the legislature intended the term "current," in the context of providing "[a] current mental health evaluation or mental health records review," to authorize a new evaluation or merely the forwarding of the last available evaluation. The primary objective of any statutory construction inquiry "is to ascertain and carry out the intent of the Legislature." Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). "Current" has two possibly applicable definitions: "occurring in or belonging to the present time" and "in evidence or in operation at the time actually elapsing." Webster's Third New International Dictionary 557 (2002). Thus, "current" could mean either "occurring in the present time" (a new evaluation) or "in operation at the time actually elapsing" (the last available evaluation). However, a comprehensive reading of chapter 71.09 RCW shows that the plain meaning of "current" must include a new evaluation. "Plain meaning is `discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" Udall v. T.D. Escrow Servs., Inc., 159 Wash.2d 903, 909, 154 P.3d 882 (2007) (quoting Tingey v. Haisch, 159 Wash.2d 652, 657, 152 P.3d 1020 (2007)).
¶ 13 Reading "current" in RCW 71.09.025(1)(b)(v) as authorizing the release of only the last available evaluation does not make sense in the context the word is used. "[A] single word in a statute should not be read in isolation, and . . . `the meaning of words may be indicated or controlled by those with which they are associated.'" State v. Roggenkamp, 153 Wash.2d 614, 623, 106 P.3d 196 (2005) (internal quotation marks omitted) (quoting State v. Jackson, 137 Wash.2d 712, 729, 976 P.2d 1229 (1999)). In this case, the statute is phrased "provide . . . [a] current" and uses the indefinite article "a" as opposed to a definite article, such as "the." "A" is "used as a function word before most singular nouns other than proper and mass nouns when the individual in question is undetermined, unidentified, or unspecified." Webster's, supra, at 1. Therefore, by choosing the use of an indefinite article instead of using a definite article, the legislature intended to provide "a current mental health evaluation" that is undetermined (i.e., yet to be done) rather than "the current mental health evaluation," which has already been determined.
¶ 14 Additionally, interpreting RCW 71.09.025(1)(b)(v) to not authorize the agency to perform a mental health evaluation would render that statutory language superfluous. Under rules of statutory construction "no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error." Klein v. Pyrodyne Corp., 117 Wash.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991). RCW 71.09.025(1)(b)(iii) requires the agency to deliver to the prosecutor "[a]ll records relating to the psychological or psychiatric evaluation *1164 and/or treatment of the person." Because the agency must provide all records under RCW 71.09.025(1)(b)(iii), the language in RCW 71.09.025(1)(b)(v) would be superfluous if it merely specified another existing record that shall be provided. Therefore, RCW 71.09.025(1)(b)(v) must authorize the agency to perform an evaluation.
¶ 15 Strand claims that this cannot be the case because this court has previously stated that "RCW 71.09.040 provides the exclusive means for obtaining mental examinations of civil commitment respondents." In re Det. of Audett, 158 Wash.2d 712, 726, 147 P.3d 982 (2006) (citing In re Det. of Williams, 147 Wash.2d 476, 490-91, 55 P.3d 597 (2002)). Strand, however, misapplies Audett. First, the language from Audett that Strand cites simply does not apply to him because he was not a respondent at the time of Dr. Longwell's first mental health evaluation.[3] Second, a full reading of Audett shows that it provides little, if any, support for Strand's position that chapter 71.09 RCW bans prefiling examinations. The issue in Audett was whether or not this court's decision in Williams was to apply retroactively. Id. at 715, 147 P.3d 982. Williams addressed only whether or not a prosecutor could compel an examination under CR 35 during SVP proceedings under chapter 71.09 RCW. Williams, 147 Wash.2d at 486, 55 P.3d 597. It did not address the use of voluntary examinations that took place prior to the commencement of SVP proceedings. Indeed, in Williams this court was presented with multiple instances of prefiling and pre-probable-cause-hearing mental health examinations and did not find any reason to question their validity. See id. at 480-84, 55 P.3d 597.
¶ 16 The SVP statute authorizes a current mental health evaluation to be performed and provided to the prosecutor. Consequently, Strand's claim that Dr. Longwell's evaluation was unauthorized by statute and in violation of due process is rejected.

II. Strand Did Not Have a Right to Counsel at his Prefiling Examination

¶ 17 Strand argues that he had a statutory right to counsel at Dr. Longwell's prefiling evaluation. The SVP statute specifically provides the right to counsel during key portions of an SVP proceeding: (1) during the probable cause hearing, RCW 71.09.040(3); (2) after the probable cause hearing and through the initial commitment trial, RCW 71.09.050(1); and (3) after the commitment during postcommitment release proceedings, RCW 71.09.090(2)(b). Under the statutory canon expressio unius est exlusio alterius, the express inclusion in a statute of the situations in which it applies implies that other situations are intentionally omitted. State v. Delgado, 148 Wash.2d 723, 729, 63 P.3d 792 (2003). The legislature included an express statutory right to counsel during only certain stages of an SVP proceeding. This does not include the investigatory period prior to a probable cause filing.
¶ 18 In the absence of an express right to counsel, Strand attempts to read one into RCW 71.09.050(1), which provides that SVP respondents "shall be entitled to the assistance of counsel" at "all stages of the proceedings." Strand claims that "all stages of the proceedings" includes a prefiling investigatory mental health examination. Strand's reading, however, runs counter to the language of the statute. "[P]roceeding" is defined as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's Law Dictionary 1324 (9th ed.2009). Reading the statute in context, the phrase "stages of the proceedings" appears only in the section titled, "Trial  Rights of parties." RCW 71.09.050. We have previously held that this analysis leads to the conclusion that "stages of the proceedings" refers to "only three specific events set forth in the chapter that the legislature might have explicitly considered to be `proceedings' [:][f]irst, the probable cause hearing[,] RCW 71.09.040(2)[;][s]econd, the statutorily mandated examination[,] RCW 71.09.040(4)[;][f]inally, the trial itself[,] RCW 71.09.050." In re Det. of Kistenmacher, 163 *1165 Wash.2d 166, 171, 178 P.3d 949 (2008) (emphasis added). Indeed, we have previously rejected an overarching right to counsel, stating that "[i]f RCW 71.09.050(1) truly represents the overarching statutory grant of the right to counsel at all stages of all proceedings under the entire chapter, the grant of the right to counsel in [RCW 71.09.090(2)] is surplusage." In re Det. of Petersen, 138 Wash.2d 70, 92, 980 P.2d 1204 (1999). Strand urges us to adopt an interpretation of RCW 71.09.050(1) that would do precisely the same thing. We decline to do so.
¶ 19 Strand further argues that he had a constitutional right to counsel during his prefiling evaluation and that that right was violated. Since SVP proceedings are civil and not criminal in nature, the rights afforded under the Fifth and Sixth Amendments do not attach to SVP petitioners. Id. at 91, 980 P.2d 1204 (citing In re Pers. Restraint of Young, 122 Wash.2d 1, 23, 857 P.2d 989 (1993)). As such, Strand must rely solely on the guaranty of "fundamental fairness" provided by the due process clause. Id. "[I]t is possible to postulate that a biased or negligent psychologist in the employ of the State may conduct a tendentious or careless examination and reach an unsupportable or incorrect conclusion." Id. at 91-92, 980 P.2d 1204. However, as in Petersen, any concerns that Dr. Longwell's examination rose to such an egregious level are "wholly cured by [the defendant's] statutory right[s]." Id. at 92, 980 P.2d 1204. Strand had the right to court-appointed counsel at "all stages of the proceedings" and the right to an expert of his choosing at public expense. RCW 71.09.050(1), (2). Strand also had the right, through counsel, to present evidence and question witnesses, including Dr. Longwell, at his probable cause hearing. RCW 71.09.040(2), (3). These rights are enough to ensure the "fundamental fairness" of the due process clause. As such, there is no constitutional or statutory mandate that requires the presence of counsel during a prefiling examination.

III. Strand Is Not Entitled to a Voluntariness Hearing

¶ 20 Finally, Strand contends that the trial court did not hold a voluntariness hearing to determine if the statements that he gave prior to and during the SVP proceeding were admissible. Strand claims that this violated his due process rights. Strand, however, cites no authority granting the right to a voluntariness hearing in the context of a voluntary prefiling psychological interview. Instead, Strand attempts to use federal immigration and criminal law to imply such a right. First, as stated above, SVP proceedings are civil and not criminal in nature. Young, 122 Wash.2d at 23, 857 P.2d 989. If Strand's statements are indeed a confession, and are later used to prosecute Strand, he is constitutionally entitled to a voluntariness hearing in that criminal proceeding. Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This entitlement, however, does not extend to civil proceedings.
¶ 21 Second, Strand's analogy to immigration cases serves to undermine his argument that his due process rights were violated. Immigration hearings, like SVP proceedings, must comply with the due process guaranty of fundamental fairness. See, e.g., Cuevas-Ortega v. Immigration & Naturalization Serv., 588 F.2d 1274, 1277 (9th Cir.1979); supra p. 1165. However, the civil nature of such hearings renders the voluntariness inquiry "markedly different from that in the criminal context." Cuevas-Ortega, 588 F.2d at 1277. In particular, the burden is on the respondent to the proceedings, not the State, to demonstrate a lack of voluntariness. See United States v. Alderete-Deras, 743 F.2d 645, 648 (9th Cir.1984) (holding that exclusion requires a showing of coercion or improper behavior); Cuevas-Ortega, 588 F.2d at 1278 (holding that involuntariness requires a showing of "coercion, duress, or improper action"); cf. Bong Youn Choy v. Barber, 279 F.2d 642, 647 (9th Cir.1960) ("the record leaves no room for doubt that the improper conduct of the Immigration agents induced the admissions" (emphasis added)). In Bong Youn Choy, the respondent to the deportation proceeding offered unchallenged testimony that the authorities made threats of criminal prosecution and deportation over a period of seven *1166 hours which stretched into the early morning to coerce a confession. 279 F.2d at 644-47. Choy was subjected to threats that "induc[ed] fear" and caused "mental terror" to the point that he felt compelled to give a confession after hours of repeated denials of any criminal conduct. Id. at 647. No such violation is alleged here. Strand produces little beyond his self-serving assertion that he made his repeated and consistent statements involuntarily.
¶ 22 The due process standard for inadmissible involuntary statements in civil cases requires that the "statement was induced by coercion, duress, or improper action on the part of the . . . officer, and where the petitioner introduces no such evidence, the bare assertion that a statement is involuntary is insufficient." Cuevas-Ortega, 588 F.2d at 1278 (citing Ben Huie v. Immigration & Naturalization Serv., 349 F.2d 1014, 1017 (9th Cir.1965)). Strand has provided nothing more than a bare assertion of involuntariness. Due to Strand's failure to make the threshold showing that his statement was inadmissible, he was not entitled to a voluntariness hearing.

CONCLUSION
¶ 23 The SVP statute authorizes a current mental health examination be provided to the prosecutor at which the SVP petitioner has no statutory or constitutional right to counsel. Additionally, there is no voluntariness hearing provided for in the civil SVP statute and no constitutional requirement to create one. For these reasons, we affirm the decision of the Court of Appeals.
WE CONCUR: CHARLES W. JOHNSON, BARBARA A. MADSEN, MARY E. FAIRHURST and JAMES M. JOHNSON, JJ.
SANDERS, J. (dissenting).
¶ 24 The majority claims the sexually violent predator (SVP) statute "authorizes a prefiling psychological examination," majority at 1163; however John Strand is not entitled to representation at his examination notwithstanding former RCW 71.09.050 (1995), which guarantees the right to an attorney "[a]t all stages of the proceedings under this chapter. . . ."
¶ 25 The majority opines, in circular fashion, there is no right to a voluntariness hearing in a "voluntary prefiling psychological interview." Majority at 1165. And because this is a "civil" incarceration, rather than a "criminal" one, we need not be concerned this man's right to due process was violated in connection with his loss of liberty.
¶ 26 I could not disagree more.
¶ 27 Because this statute provides for indefinite incarceration, a massive curtailment of liberty by any standard, we must construe it strictly against the government and liberally in favor of the prisoner. In re Det. of Martin, 163 Wash.2d 501, 508, 182 P.3d 951 (2008). The majority does anything but.
¶ 28 At the heart of this case is a mental health evaluation conducted "pursuant to RCW 71.09" by Dr. Kathleen Longwell on January 5, 2004 over a year prior to the date the State actually filed and served a petition alleging Mr. Strand is a sexually violent predator. As recounted by the majority, this petition relied in large part on the prior mental health evaluation of Dr. Longwell. The majority then goes on to state:
Prior to her evaluation of Strand, Dr. Longwell informed him that the interview was not confidential and that the information he volunteered to her could be used against him in an SVP commitment proceeding. Strand agreed to the evaluation and signed a consent form [which is not in the record].
Majority at 1161-62 (emphasis added). I think the majority misreads the record. Apparently the majority is relying upon Dr. Longwell's written report, which begins:
This evaluation is being completed pursuant to RCW 71.09, the sexually violent predator act, at the request of the Washington Department of Corrections (DOC). For the purpose of this evaluation Mr. Strand was asked if he would like to participate in a clinical interview by the undersigned.. . ., etc.
Clerk's Papers (CP) at 104. Apparently the majority is assuming that Dr. Longwell personally *1167 advised Strand of various things set forth on page 2 of the majority opinion; however the report does not say that. We do know, however, that Dr. Longwell maintains her office in Oakland, California, and it very well could have been that she traveled to the prison only after prison officials had assured her that Strand would participate in the interview and that he had been properly advised. Other than her hearsay report we don't know exactly what he was advised. The consent form he supposedly signed is strangely not in the record. However it does clearly appear he was not advised he had a right to consult an attorney prior to consenting to the interview much less to the presence of an attorney during the interview "pursuant to RCW 71.09. . . ." CP at 104. Whether Strand voluntarily consented was not challenged in the trial court, and the record is correspondingly sparse on this issue. Unfortunately the record does not include Strand's version of the events leading to the examination.
¶ 29 During the mental examination Longwell questioned Strand about several instances of alleged, but unadjudicated, sexual acts with other female victims. Strand denied committing each of the acts. However he did admit having nonsexual contact with the alleged female victims at the times and places described. Based on this admission, which allegedly corroborated the women's stories, Longwell opined that Strand was a sexually violent predator. During the trial Strand sought to have these witnesses' testimony excluded as irrelevant. However the trial court admitted the testimony about the alleged, but unadjudicated, acts reasoning the acts were more likely than not to have been committed based largely on Strand's corroboration.[1]
¶ 30 The Attorney General attached a copy of Longwell's report to the probable cause petition.[2] On May 16, 2005, Strand stipulated that sufficient evidence, including Longwell's report, existed to support probable cause. Following a trial, which included Longwell's testimony about her examination of Strand, a jury found Strand was an SVP. On February 6, 2006, Strand was committed indefinitely. Strand's attorney failed to object to the use of Longwell's report to support the probable cause determination or to object to the psychologist's testimony at trial about her examination of Strand.
¶ 31 Strand appealed his commitment to the Court of Appeals, Division Two, arguing the State had no authority to examine him until after the probable cause hearing, he was denied effective assistance of counsel, his statements were involuntary and therefore inadmissible, and the loss of a portion of trial testimony required reversal of his commitment. In re Det. of Strand, 139 Wash.App. 904, 162 P.3d 1195 (2007).

ANALYSIS
¶ 32 The SVP statute, chapter 71.09 RCW, allows for the indeterminate commitment of an individual who "has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." *1168 Former RCW 71.09.020(16) (2006). If the State wishes to commit an individual under this chapter, it must "file a petition alleging that the person is a `sexually violent predator' and stating sufficient facts to support such allegation." Former RCW 71.09.030 (2008). Once the "probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator." Former RCW 71.09.040(4) (2001).
¶ 33 Strand argues the State failed to follow the proper procedures when it conducted a mental examination before the trial court held a probable cause hearing. He further argues this error was constitutional in magnitude and thus requires reversal notwithstanding his failure to object. The State argues the mental health evaluation was not erroneous because Strand consented to the examination. Strand also assigns error to the trial court's refusal to consider whether Strand's statements were voluntary before admitting them into evidence.

I. Dr. Longwell's evaluation of Strand was not authorized by statute and thus requires a new probable cause determination and trial
¶ 34 The SVP statute does not authorize the State to subject an individual to a mental examination prior to the probable cause hearing. To begin the commitment process, the State must file a petition alleging the individual is an SVP "stating sufficient facts to support such allegation." Former RCW 71.09.030. The individual is then entitled to a "hearing to contest probable cause" within 72 hours of the individual's being taken into custody on a judge's SVP determination. Former RCW 71.09.040(2). Once "the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator." Former RCW 71.09.040(4). Under this provision the State has the right to conduct a mental health examination of the individual following the probable cause hearing. See, e.g., In re Det. of Williams, 147 Wash.2d 476, 55 P.3d 597 (2002). At this mental health examination, the individual also has a statutory right to counsel. See In re Det. of Kistenmacher, 163 Wash.2d 166, 178 P.3d 949 (2008) (holding the plain language and the structure of the SVP act give a defendant a statutory right to counsel at a precommitment psychological examination). Strand was denied this right.
¶ 35 However, this case presents a different issue than either Williams or Kistenmacher. The question here is whether chapter 71.09 RCW authorizes the State to conduct a mental health examination of an individual as an SVP prior to the probable cause hearing and then use the results of that examination to establish probable cause. As Strand properly notes, there is no authorization for such an examination anywhere in chapter 71.09 RCW. Since we must limit the statute to its terms,[3] such an evaluation is not properly administered under the SVP statute.
¶ 36 Furthermore, the larger context of the SVP commitment statute indicates there is no authorization for an evaluation prior to the probable cause hearing. The legislature included authorization for an evaluation following the probable cause hearing in former RCW 71.09.040(4). It also provides for annual evaluations following commitment in RCW 71.09.070. Using the statutory interpretation maxim expressio unius est exclusio alterius,[4] this can mean only there is no authorization to subject an individual to an evaluation except in these enumerated circumstances.
¶ 37 Moreover, as aforementioned, the State begins the SVP procedures by filing a commitment petition. Until the petition is filed, the individual is not subject to the provisions of the SVP statute. This would include any requirement to submit to a mental health examination. When Dr. Longwell prefaced her report that she was conducting *1169 her evaluation "pursuant to RCW 71.09," she misrepresented her legal authority to the court and probably to the prisoner as well.
¶ 38 The majority argues authorization for the evaluation is contained in former RCW 71.09.025(1)(b) (2008). Majority at 1162-64. That statute requires the agency that refers the individual for petition as an SVP to "provide the prosecutor with all relevant information including . . .:(iii)[a]ll records relating to the psychological or psychiatric evaluation and/or treatment of the person; . . . . and (v)[a] current mental health evaluation or mental health records review." Former RCW 71.09.025(1)(b). However, this section merely requires the agency to forward all information it has to the petitioning prosecutor. It does not authorize the State to conduct its own mental examination pursuant to chapter 71.09 RCW. As we have previously held, "RCW 71.09.040 provides the exclusive means for obtaining mental examinations of civil commitment respondents." In re Det. of Audett, 158 Wash.2d 712, 726, 147 P.3d 982 (2006) (citing Williams, 147 Wash.2d at 490-91, 55 P.3d 597). Since former RCW 71.09.040 provides the exclusive means for obtaining mental examinations in the civil commitment process, former RCW 71.09.025(1)(b) cannot provide another means to obtain such an evaluation, let alone provide authority to use the exam to establish probable cause.

II. The unauthorized mental evaluation violated Strand's due process rights including his right to counsel
¶ 39 Strand asserts the mental examination violated his due process rights including his right to counsel, his right to remain silent, and his right to privacy under article I, section 7 of the state constitution. "We have repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Vitek v. Jones, 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). "[I]f the State grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, `the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.'" Id. at 490-91, 100 S.Ct. 1254 (quoting Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)); see also State ex rel. T.B. v. CPC Fairfax Hospital, 129 Wash.2d 439, 452-53, 918 P.2d 497 (1996) (noting "`due process protections are necessary to insure [a] state-created right is not arbitrarily abrogated'" in civil commitment context (internal quotation marks omitted) (quoting Vitek, 445 U.S. at 489, 100 S.Ct. 1254)).
¶ 40 The State's failure to follow the procedures mandated by the SVP statute deprived Strand of his liberty without due process of law. Individuals who are committed as SVPs are entitled to procedural due process protections. In re Pers. Restraint of Young, 122 Wash.2d 1, 45, 857 P.2d 989 (1993) (citing Jackson v. Indiana, 406 U.S. 715, 724, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)). The "process due" an SVP petitioner is that process circumscribed by "the statute which authorizes civil incarceration." Martin, 163 Wash.2d at 511, 182 P.3d 951.
¶ 41 Under Martin any deviation from the procedures outlined in the SVP statute is a violation of procedural due process. Here the State clearly deviated from the statutory procedures when it employed a psychologist to evaluate Strand before the probable cause hearing and then used that evaluation to prove probable cause. Thus, the mental health evaluation violated Strand's procedural due process rights.
¶ 42 The State also failed to follow the proper procedure when it deprived Strand of his statutory right to counsel at the precommitment mental examination. "We agree and conclude the plain language of the statute and the structure of the sexually violent predator act [gives the defendant] a statutory right to counsel at his precommitment psychological examination." Kistenmacher, 163 Wash.2d at 173, 178 P.3d 949. This was clearly a precommitment psychological exam, so Strand had a statutory right to counsel. Since the SVP statute affords prisoners a right to counsel, it was also a due process *1170 violation to deviate from procedure and deny Strand this right.
¶ 43 Even if the majority were correct that "[t]he SVP statute . . . authorizes a prefiling psychological examination," majority at 1163, former RCW 71.09.050(1) guarantees:
At all stages of the proceedings under this chapter, any person subject to this chapter shall be entitled to the assistance of counsel, and if the person is indigent, the court shall appoint counsel to assist him or her.
Although I disagree that this examination was conducted pursuant to the statute, if it were, the prisoner would have "a statutory right to counsel at his precommitment psychological examination." Kistenmacher, 163 Wash.2d at 173, 178 P.3d 949. The majority can't have it both ways. If the prefiling examination was authorized by former RCW 71.09.025(1)(b)(v), it must therefore be subject to the statutory requirement of former RCW 71.09.050(1), which provides: "At all stages of the proceedings under this chapter, any person subject to this chapter shall be entitled to the assistance of counsel. . . ." (Emphasis added.)
¶ 44 The State violated Strand's due process rights twice when it contravened the SVP statute by conducting a mental evaluation without probable cause and then denied him his right to counsel during this evaluation.

III. The record does not show Strand voluntarily waived his constitutional rights by submitting to the mental evaluation
¶ 45 According to the majority, even if the State lacked statutory authority under chapter 71.09 RCW to conduct the mental examination, there is no error here because Strand voluntarily consented to the exam. However, if Strand reasonably believed the examination was required by law, he equally believed he could not lawfully refuse. If he had no known right to refuse, then any consent was involuntary and invalid. The Court of Appeals agreed with the State and held Strand consented to the examination. However, the factual record does not support that conclusion.
¶ 46 To waive a constitutional right, the waiver must be intentional and the right must be known. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). To be valid, the consent must be made knowingly, intelligently, and voluntarily. State v. Thomas, 128 Wash.2d 553, 558, 910 P.2d 475 (1996). Moreover, to be knowing, intelligent, and voluntary, the State must show the individual understood he had the ability to refuse consent without repercussion. See State v. Ferrier, 136 Wash.2d 103, 116, 960 P.2d 927 (1998). Here, the State failed to carry its burden to show Strand's alleged consent to the exam was valid, as there is no signed consent form in the record nor any other corroboration beyond the psychologist's report's hearsay assertion Strand was informed of the consequences and agreed.
¶ 47 Strand argues due process prohibits the admission of any involuntary statements in an SVP hearing, and the trial court erred by admitting the statements he made to the psychologist without first determining if they were voluntary.
¶ 48 An individual has due process rights in a SVP hearing, notwithstanding its civil nature. Young, 122 Wash.2d at 26, 857 P.2d 989. The Ninth Circuit Court of Appeals has held the admission of coerced statements in a civil trial violates an individual's due process rights. Bong Youn Choy v. Barber, 279 F.2d 642, 646-47 (9th Cir.1960); see also United States v. Alderete-Deras, 743 F.2d 645, 647 (9th Cir.1984). Although Choy involved a deportation hearing, it applies where the hearing results in the complete deprivation of liberty as does an SVP hearing. Thus, the admission of coerced statements in an SVP hearing violates the defendant's due process rights.
¶ 49 The United States Supreme Court has held an individual's due process protection against the use of a coerced confession required the use of procedures "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The Court further held that where a defendant *1171 had not received such a voluntariness hearing, the conviction which relied upon the statements must be reversed. Id. The United States Supreme Court has held due process requires a full hearing on the voluntariness of an admission before admitting that statement. We must do no less.
¶ 50 Therefore, we should at least remand to the trial court for a determination of whether Strand knowingly, intelligently, and voluntarily consented to the examination with full knowledge of his right to refuse without negative repercussion and his right to have an attorney advise him and accompany him to the evaluation.

IV. The unauthorized mental evaluation is a manifest error affecting a constitutional right
¶ 51 The State argues that even if it lacked authority to conduct the mental health examination, Strand's failure to object at trial to the evaluation, or to the admission of the psychologist's findings, failed to preserve the error. However, a party may raise an issue for the first time in an appellate court if it is a "manifest error affecting a constitutional right." RAP 2.5(a). As aforementioned, Strand contends the mental evaluation violated his due process rights, which include his right to counsel. He further argues that even if the examination does not violate a constitutional right, the court should exercise its discretion and consider the issue nonetheless. RAP 2.5(a) ("The appellate court may refuse to review any claim of error . . . ." (emphasis added)).
¶ 52 "Errors are `manifest' for purposes of RAP 2.5(a)(3) when they have `"practical and identifiable consequences in the trial of the case."'" State v. Mills, 154 Wash.2d 1, 6, 109 P.3d 415 (2005) (quoting State v. Roberts, 142 Wash.2d 471, 500, 14 P.3d 713 (2000) (quoting State v. WWJ Corp., 138 Wash.2d 595, 603, 980 P.2d 1257 (1999))). As Strand properly argues, the error here had several identifiable consequences in his trial. The improper examination was used to support the initial probable cause finding, and without it there was little evidence linking him to the prior uncharged allegations of molestation. Because the examination was not authorized by statute and denied Strand his statutory right to counsel, the State violated Strand's constitutionally protected due process rights. Thus, the unauthorized examination was a manifest error affecting Strand's constitutional rights.

CONCLUSION
¶ 53 We should hold the SVP statute does not authorize a mental examination of an individual before the State has demonstrated probable cause to commit the individual, and any such premature examination constitutes a violation of the statute and hence of due process. Moreover because the State conducted a mental evaluation in violation of Strand's right to counsel, the examination violated Strand's due process rights in this respect as well. At the very least we should remand for the trial court to determine whether Strand voluntarily, knowingly, and intelligently waived his statutory and due process rights and consented to the examination. I find no implication in the record, however, that Strand was advised of his right to counsel, which should be dispositive in his favor. We should further hold coerced statements are inadmissible in an SVP hearing; and when in doubt as to whether statements have been coerced, a trial court must hold a voluntariness hearing. If the trial court finds Strand did not knowingly waive his rights, then the psychologist's evaluation and any related findings and testimony must be suppressed in both the probable cause hearing and the trial.
¶ 54 I dissent.
WE CONCUR: GERRY L. ALEXANDER, C.J., DEBRA L. STEPHENS and TOM CHAMBERS, JJ.
NOTES
[1] This form is not included in the record before the court. There was, however, no objection to the reference to it in Dr. Longwell's report.
[2] Errors may also be raised on appeal for the first time if they involve "lack of trial court jurisdiction" or "failure to establish facts upon which relief can be granted." RAP 2.5(a). Strand makes no such claims here.
[3] Given that chapter 71.05 RCW also provides for mental examinations of some civil commitment respondents, it may also be inaccurate to say RCW 71.09.040 is the exclusive means to obtain a mental examination.
[1] This court has not specifically decided whether ER 404(b) excludes testimony about alleged, but unadjudicated, "prior bad acts" in an SVP trial. But see In re Det. of Turay, 139 Wash.2d 379, 402, 986 P.2d 790 (1999) (holding ER 404(b) does not bar admission of testimony about prior bad acts because the bad acts are being used to demonstrate a person suffers from a mental abnormality and not that the defendant committed a specific "bad act."). However, for testimony of the prior bad act to be admissible, the testimony must be relevant. To be relevant the evidence must tend to show the prior alleged acts actually occurred. See State v. DeVries, 149 Wash.2d 842, 849, 72 P.3d 748 (2003). The court here found the testimony relevant because Strand inadvertently corroborated the victims' allegations.
[2] Longwell's report claims that, "According to RCW 71.09, the danger posed by an individual and the basis for his or her judicial commitment is a mental abnormality that predisposes the individual to the commission of criminal sexual acts." CP at 112 (emphasis added). However the statute provides the mental abnormality must "make [] the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." Former RCW 71.09.020(16) (2006) (emphasis added). Although Strand does not present the issue, Longwell clearly used the wrong standard in her assessment. The statute requires more than a predisposition; it requires the mental illness to cause the individual to act.
[3] We strictly construe the SVP statute, limiting our inquiry to its terms. Martin, 163 Wash.2d at 508, 182 P.3d 951 (citing In re Det. of Swanson, 115 Wash.2d 21, 31, 804 P.2d 1 (1990)).
[4] "The expression of one thing is the exclusion of another." Black's Law Dictionary App. B at 1830 (9th ed.2009).