IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of:<br><br>B.W.,<br><br>          Appellant. | No. 84146-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, J. — B.W. appeals a 14-day involuntary commitment order. She contends that the statutory notice requirements, specifically those regarding her firearm rights under RCW 71.05.240(2), were not followed. Because neither the trial court nor the prosecutor advised B.W. that her constitutionally protected right to possess a firearm would be revoked if she did not consent to continued treatment, we reverse and remand to vacate the commitment order.[1]

## FACTS

On May 1, 2022, B.W. was detained in Snohomish County pursuant to the involuntary treatment act (ITA),[2] for an initial 120 hours of mental health treatment based on allegations that she was "gravely disabled" due to a behavioral health disorder. The initial detention petition included a notice of rights informing B.W.

_____

[1] Given this disposition, we need not reach B.W.'s claims that the State failed to prove she was gravely disabled by a mental disorder, and that the court ordered involuntary confinement based on a different mental disorder from that alleged in the petition.
[2] Ch. 71.05 RCW.

that her right to possess firearms would be suspended for a period of six months if "detained on the grounds that you present a likelihood of serious harm to yourself, others, or property."

Following the initial 120-hour detention, B.W.'s treatment providers at North Sound Telecare Evaluation and Treatment Center in Skagit County, acting on behalf of the State, filed a petition for an additional 14 days of involuntary treatment pursuant to RCW 71.05.240. The petition again alleged that B.W. was "gravely disabled" and further specified this was due to "a mental disorder diagnosed as: Brief Psychotic Disorder." The 14-day involuntary treatment petition was silent regarding firearm rights.

On May 6, 2022, the trial court conducted a probable cause hearing at which B.W. appeared. Before the State began its presentation of evidence, counsel for B.W. moved to dismiss the 14-day involuntary treatment petition pursuant to RCW 71.05.230(7) for failure to provide the statutorily required notice that B.W. could lose her constitutional right to possess firearms if she did not consent to voluntary treatment. The court agreed that "the petition does not state that someone may lose their right to own or possess firearms," but concluded that the "defect has been cured" because the initial detention paperwork notified B.W. that her firearm rights could be lost. Defense counsel pointed out that the initial detention paperwork "only discusses the six month forfeiture after the 120 hour hold" and "does not say anything . . . about the forfeiture of firearms rights indefinitely if they are held on the 14-day hold that we're here on today." The trial court nevertheless informed B.W. that "if you don't agree to stay and I decide that you do need to stay,

2

then you will not be able to own or possess a firearm for six months." (Emphasis added.) B.W. responded, "Okay."

At the conclusion of the hearing, the trial court found that B.W. was "gravely disabled" due to "bipolar illness" and committed her to 14-day involuntary treatment. The court again orally informed B.W. that she would "not . . . be able to own or possess any firearms for six months." (Emphasis added.) The 14-day involuntary commitment order included a finding that stated, "Before this order was entered, the court notified the Respondent, orally and in writing, that the failure to make a good faith effort to seek voluntary treatment will result in the loss of Respondent's firearm rights if Respondent is detained for involuntary treatment as the result of a mental disorder."

B.W. timely appealed.

ANALYSIS

B.W. presents three separate challenges in her appeal: that the State presented insufficient evidence of grave disability, that her due process rights were violated when the court based its commitment ruling on a different mental disorder than alleged in the petition, and the constitutional violation based on the failure to follow the statutory requirements regarding her firearm rights. We agree that reversal is required because she did not receive the required notice that her constitutional right to possess firearms would be revoked if she did not consent to further confinement and do not reach her other assignments of error.[3]

---

[3] Because an involuntary commitment order may have adverse consequences on future involuntary commitment determinations this appeal is not moot, even though B.W.'s commitment

3

While this issue was preserved by defense counsel's motion to dismiss, failure to comply with RCW 71.05.240(2) is an error implicating a constitutional right that an appellant may raise for the first time on appeal. In re Det. of T.C., 11 Wn. App. 2d 51, 61-62, 450 P.3d 1230 (2019). Constitutional issues are reviewed de novo. In re Det. of Strand, 167 Wn.2d 180, 186, 217 P.3d 1159 (2009). Constitutional error is presumed prejudicial, and the State has the burden to prove it was harmless beyond a reasonable doubt. State v. Watt, 160 Wn.2d 626, 635, 160 P.3d 640 (2007).

"Washington's civil commitment statute imposes a detailed set of procedures which are expressly intended, inter alia, to end the inappropriate commitment of mentally disordered persons and to safeguard individual rights." In re Det. of Chorney, 64 Wn. App. 469, 475, 825 P.2d 330 (1992) (emphasis omitted). Under RCW 71.05.230(7), a petition for 14 days of additional confinement must "reflect[] that the person was informed of the loss of firearm rights if involuntarily committed for mental health treatment." The portion of the statute on 14-day civil commitment hearings that addresses notification expressly requires the court or prosecutor to notify the patient orally and in writing regarding the potential loss of firearms rights:

> If the petition is for mental health treatment, the court or the prosecutor at the time of the probable cause hearing and before an order of commitment is entered shall inform the person both orally and in writing that the failure to make a good faith effort to seek voluntary treatment as provided in RCW 71.05.230 will result in the loss of his or her firearm rights if the person is subsequently detained for involuntary treatment under this section.

period under the challenged order has expired. In re Det. of M.K., 168 Wn. App. 621, 625-30, 279 P.3d 897 (2012).

RCW 71.05.240(2).  We have previously held that, "There is no ambiguity in the statute.  The statute does not provide for alternate methods of notice to the patient." T.C., 11 Wn. App. 2d at 62.

In T.C., this court reversed and remanded to vacate a 14-day involuntary commitment order where the patient was not informed orally or in writing at the hearing that he would lose his firearm rights if he were involuntarily committed, or that he could avoid the loss of those rights by submitting to voluntary treatment, as RCW 71.05.240(2) explicitly requires.  Id. at 54-55.  Although the record in T.C. contained two references to the potential loss of firearms rights, the first did not originate from the trial court and the second came after the court had already entered the commitment order.  Id. at 62-63.  We held that these references failed to satisfy the express requirements of RCW 71.05.240(2).  Id. at 63.

In addition to this binding authority set out in T.C., we also note that, six months prior to B.W.'s hearing, this court reversed and remanded a 14-day ITA commitment order issued by the same commissioner in Skagit County Superior Court due to a nearly identical violation of the requirements set out in RCW 71.05.240(2).[4]  See In re Det. of L.B., No. 82510-1-I, (Wash. Ct. App. Nov. 1, 2021) (unpublished),   https://www.courts.wa.gov/opinions/pdf/825101.pdf.   As   we explained in L.B.:

> [T]here is nothing in this record to show that the court or prosecutor advised L.B. orally or in writing at the probable cause hearing or any time before entry of the commitment order that involuntary detention would extinguish her firearm rights.  At the time of her initial detention, treatment facility staff gave L.B. a form notifying her of certain rights. That form stated that detention based on a finding of

---

[4] See GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

'a likelihood of serious harm' to herself or others would lead to a 6-month suspension of her right to possess firearms. But neither the court nor the prosecutor advised L.B. that she could lose her firearm rights. And no one told L.B. that she could avoid the loss of rights by obtaining voluntary treatment or that the effect of a 14-day involuntary commitment order could be permanent.

Det. of L.B., slip op. at 3.

Here, as in T.C. and L.B., the record does not show that the court or prosecutor provided oral and written notice that failure to agree to voluntary treatment would result in a loss of firearm rights until such rights are restored. The notice of rights form that accompanied the initial detention petition advised B.W. that she would lose her firearm rights for six months "[i]f detained on the grounds that you present a likelihood of serious harm to yourself, others, or property." However, by its express terms, this notification does not apply to B.W. because the stated basis for her commitment was "grave disability," not "likelihood of serious harm."[5] The actual 14-day petition was entirely silent as to firearm rights. The trial court erred in concluding that the inapplicable firearms notice in the initial detention paperwork cured this broader procedural defect. The record does not demonstrate that B.W. ever received accurate written notice regarding the impact of a 14-day involuntary commitment on her firearms rights.

Perhaps more problematic, the court orally informed B.W. that her firearm rights would be revoked for only six months. But the six-month revocation applies to a 120-hour hold, whereas a 14-day involuntary commitment results in the

---

[5] Additionally, the court's attempted reliance upon the initial notice to cure the constitutional deficiency further fails because that notice was signed by a designated crisis responder, which does not satisfy the statutory requirement that notice be provided by "the court or the prosecutor." RCW 71.05.240(2).

indefinite revocation of firearms rights. See RCW 71.05.182(1) (six-month firearm revocation applies to individuals who have been involuntarily detained for 120 hours, but have not been subsequently committed for further involuntary treatment under RCW 71.05.240); see also RCW 71.05.240(6) (once a person has been involuntarily committed for 14 days for mental health treatment, firearms rights are revoked indefinitely).

The State acknowledges that neither the trial court nor the prosecutor properly advised B.W. that she could avoid losing her right to possess a firearm if she voluntarily continued treatment. But the State contends that the error was harmless because the trial court's oral advisement substantially complied with RCW 71.05.240(6). We disagree. The court affirmatively misinformed B.W. that any deprivation of firearm rights would last for six months. It is axiomatic that the right to notice is the right to accurate notice. Erroneous advice by the trial court here has the same practical effect as the complete failure to advise that occurred in T.C. The absence of written notice regarding the impact a 14-day involuntary commitment has on firearm rights, coupled with the misinformation regarding the duration of the loss of rights which the trial court conveyed orally, evinces total disregard for statutory requirements. See RCW 71.05.010(2) ("[T]he court must focus on the merits of the petition, except where requirements have been totally disregarded.").

The State also urges us to conclude that the statutory requirements were substantially satisfied because B.W. was present when defense counsel moved to dismiss the petition for failure to provide notice that she would lose her right to

7

possess firearms if she did not consent to voluntary treatment. But notice from defense counsel "expressly cannot" satisfy the unambiguous requirements of RCW 71.05.240(2). T.C., 11 Wn. App. 2d at 63. The State may not rest on diligent defense counsel to cure the court's, or its own, failure to comply with statutory requirements.

Finally, the State argues that the error was harmless because B.W. consented to a six-month deprivation of firearm rights and there was no indication that a proper advisement from the court would have resulted in a different outcome. But B.W. was never made aware that a 14-day involuntary commitment would result in an indefinite revocation of her rights. Just as in T.C., we are unwilling to presume that, based on the record before us, B.W. would have made the same choice if the court or the prosecutor had complied with the mandatory notice provisions of RCW 71.05.240(2).

The failure to advise B.W. in accordance with RCW 71.05.240(2) prejudicially affected her constitutional right to possess firearms. Accordingly, we reverse and remand to vacate the 14-day involuntary commitment order.

WE CONCUR:

8