# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57795-0-II |
| Respondent, | |
| v. | |
| ROGER AUGUST ROBATCEK, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Roger Robatcek appeals his conviction for one count of animal cruelty in the first degree. He argues the superior court erred when applying the definition of "physical injury" under RCW 9A.04.110(4)(a) to animal cruelty under RCW 16.52.205(1). He also argues that there is insufficient evidence supporting his conviction of animal cruelty. Finally, Robatcek argues that the trial court's order requiring him to pay the victim penalty assessment (VPA) and deoxyribonucleic acid (DNA) collection fees as legal financial obligations (LFOs) is unauthorized and must be stricken from the judgment.

We conclude that the trial court did not err in applying the definition in RCW 9A.04.110(4)(a) to animal cruelty under RCW 16.52.205. We also conclude that there was sufficient evidence proving Robatcek's conviction for animal cruelty in the first degree. Finally, we accept the State's concession and remand for the trial court to strike the VPA and DNA fees.

FACTS

In the afternoon of April 5, 2022, Nicholas Scardino was in his backyard working on his lawn mower. His 12 year-old dog, Pepe, was tethered in front of their home.

Around 3 PM, his neighbor, Robatcek, arrived home after running some errands. While unloading his groceries, Pepe was barking, which aggravated Robatcek. The barking lasted 15 to 20 minutes. In response, Robatcek devised a plan to "pop [Pepe] in the ass" with his airsoft bullet ball gun (BB gun) in an attempt to get Pepe to "quit barking" and go under the porch. Rep. of Proc. (RP) at 59. Robatcek went inside his home, got his BB gun, pumped it "just a couple" of times, aimed at Pepe, and fired. RP at 59.

Peering around the side of the houses, Nicholas[1] saw Robatcek aim at Pepe and fire. After firing, Nicholas asked Robatcek what he was doing; Robatcek did not answer. Nicholas asked again and Robatcek sneered while stating, "I shot your dog because it was barking" and proceeded to go in his house. RP at 32. Nicholas went to the front of the house where he found Pepe under the porch, picked him up, and saw that Pepe's eye was "bleeding everywhere." RP at 33. Nicholas called the police and his mother, Sheila Scardino, at work.

Officer Hunter Heim and animal control officer Ariana West arrived at the scene. Sheila arrived shortly after. Upon arrival, West stated Nicholas was "very shaken up" and "crying." RP at 47. West also noticed blood spots all over the floor. West added that Pepe's eye had constant blood dripping from it. West proceeded to call multiple vets in the county to inquire about getting Pepe care.

In his report, Heim noted that he spoke with Latricia Knox, Robatcek's other neighbor. Knox stated that Robatcek had previously threatened to kill her dog. Heim also reported that Robatcek said he did not shoot Pepe.

The State charged Robatcek with one count of animal cruelty in the first degree.

---

[1] Due to Nicholas and his mother, Sheila, having the same surname, Scardino, we will refer to each by their first names. No disrespect is intended.

At trial, Nicholas, Robatcek, and West recounted the aforementioned facts. The trial court also heard testimony from Sheila, Walter Wentz, and Dr. Janine Hart. Sheila stated she received the call from Nicholas telling her Pepe was shot in the eye. When she arrived home, Pepe's eye was bleeding and he was hiding in her room. A bit later, because there were no vets in the county that could care for Pepe, Sheila's brother arrived and drove them to Portland, Oregon, to receive emergency veterinary care. The emergency vet provided Pepe with medications to be comfortable until receiving surgery to remove his eye. Sheila said Pepe was depressed and skittish after the surgery.

Next, the trial court heard from Dr. Hart. Dr. Hart stated she performed surgery following the trauma to Pepe's eye. She added that the penetrating injury was "rather catastrophic," describing it as going all the way through the globe, collapsing the eye, causing its contents to leak out, causing lots of discomfort, and raising the risk of infection. RP at 14. Therefore, she determined removal appropriate. Finally, Dr. Hart added that the injury was consistent with being shot in the eye by an object because of the hole seen in the cornea.

Surgery was performed on April 7. Pepe was discharged the following day. Dr. Hart noted Pepe has healed well.

Finally, the trial court heard testimony from Wentz, owner of Gator's Custom Guns. Wentz tested Robatcek's BB gun. Wentz testified that a pump action gun can be pumped anywhere from two to ten times per average manufacturer's recommendations. Therefore, the more it is pumped, the more power and range. Wentz added that in his experience, BB guns are a less accurate form of projectile, therefore, the less pressure applied the less accuracy he would expect.

Ultimately, the trial court found Robatcek guilty of animal cruelty in the first degree. The court applied the definition of "physical injury" from RCW 9A.04.110(4)(a), the definition statute from the criminal code, because the term was not defined in the animal cruelty statute. RCW 9A.04.110(4)(a) defines "physical injury" as "physical pain or injury, illness, or an impairment of physical condition."

The trial court stated that when looking at RCW 16.52.205(1)(b) of the animal cruelty statute and applying the definition of "physical pain" from RCW 9A.04.110(4)(a),

> the natural consequence of shooting at an animal with a BB gun is it's going to cause some pain. Doesn't have to be a great deal of pain. It just has to be pain. So, I don't doubt that this was more injury than he intended, but it was injury.

RP at 81-82. The trial court added that when looking at the physical evidence, the eye injury and the need for removal, it did not "buy" that Robatcek only pumped the BB gun twice. RP at 82.

At sentencing, the trial court imposed the standard range of 35 days with 30 days converted to community service. The court also determined Robatcek was indigent but imposed a $500 VPA fee and $100 DNA fee. Robatcek appeals.

## ANALYSIS

Robatcek asserts that the trial court erred when applying the definition of "physical injury" from RCW 9A.04.110(4)(a) to animal cruelty under RCW 16.52.205(1). He further alleges that the evidence fails to show he had the necessary specific intent to cause substantial pain. Finally, he asserts, and the State concedes, that the trial court erred in imposing unauthorized LFOs. We address each argument in turn, beginning with Robatcek's statutory interpretation arguments related to the definition of "physical injury."

4

I. DEFINITION OF "PHYSICAL INJURY" IN RCW 16.52.205(1)

A. Legal Principles

We review questions of statutory interpretation de novo. *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7, 468 P.3d 1056 (2020). We may affirm on any ground the record adequately supports. *Skinner v. Holgate*, 141 Wn. App. 840, 849, 173 P.3d 300 (2007).

"The object of statutory interpretation is to ascertain and carry out the legislature's intent." *State v. Sanchez*, 177 Wn.2d 835, 842, 306 P.3d 935 (2013). Statutory construction begins by reading the text of the statute or statutes involved. *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005).

Courts derive legislative intent from "the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." *PeaceHealth*, 196 Wn.2d at 8. If there are any undefined terms, the term's plain and ordinary meaning applies. *Clark County v. Portland Vancouver Junction R.R.*, 17 Wn. App. 2d 289, 295, 485 P.3d 985 (2021). When determining the meaning of undefined terms, a court "will consider the statute as a whole and provide such meaning to the term as is in harmony with other statutory provisions." *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 564, 29 P.3d 709 (2001). Under rules of statutory construction, "'no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error.'" *In re Det. of Strand*, 167 Wn.2d 180, 189, 217 P.3d 1159 (2009) (quoting *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991)). If necessary, we may also rely on the dictionary or thesaurus when interpreting statutes. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010).

1.     Intent to cause either "substantial pain" or "physical injury" under RCW 16.52.205[2]

Chapter 16.52 RCW governs prevention of cruelty to animals. RCW 16.52.205(1) provides,

> A person is guilty of animal cruelty in the first degree when, except as authorized in law, *he or she intentionally* (a) inflicts substantial pain on, *(b) causes physical injury to,* or (c) kills an animal by a means causing undue suffering or while manifesting an extreme indifference to life, or forces a minor to inflict unnecessary pain, injury, or death on an animal.

(Emphasis added.) RCW 16.52.011 provides definitions to be used in interpreting chapter 16.52 RCW. RCW 16.52.011 does not include a definition for "physical injury."

Robatcek argues that the trial court's reliance on the definition of "physical injury" in RCW 9A.04.110(4)(a) renders superfluous RCW 16.52.205(1)(a), which provides an alternative for violating the statute when one "intentionally inflict[s] substantial pain." Br. of Appellant at 7 (internal quotation marks omitted). This is so, he argues, because "physical injury" includes "any pain whatsoever, including minor discomfort." Appellant's Br. at 7. But we disagree because even if we were to conclude that physical injury includes minor discomfort (a conclusion we do not reach here), physical injury is a broader definition than substantial pain, including "physical pain or injury, illness, or an impairment of physical condition." RCW 9A.04.110(4)(a). While substantial pain is undefined, we recognize that we must interpret statutes to avoid rendering statutory language "'inoperative or superfluous unless it is the result of obvious mistake or error.'" *Strand*, 167 Wn.2d at 189 (quoting *Klein*, 117 Wn.2d at 13). Robatcek makes no such showing here. His argument fails.

---

[2] The State charged Robatcek under both prongs of RCW 16.52.205, but the superior court ultimately found Robatcek guilty under RCW 16.52.205(1)(b) "causes physical injury." Accordingly, we address only that portion of the statute.

Robatcek next argues the legislature did not intend to import RCW 9A.04.110's definition of "physical injury" into chapter 16.52 RCW because if it did so intend, it would have incorporated the definition expressly as it had elsewhere in chapter 16.52 RCW.

Robatcek directs us to RCW 16.52.011, the definition section of chapter 16.52 RCW, where at subsections (k) and (q), the legislature expressly incorporated definitions for "malice" and "substantial bodily harm," respectively, from RCW 9A.04.110 into chapter 16.52 RCW. He correctly highlights the legislature could have incorporated the definition for "physical injury" expressly as it did for the definitions of "malice" and "substantial bodily harm." Robatcek ends this portion of his analysis there. Presumably, he intends to convey that because the legislature expressly incorporated definitions from chapter 9A.04 RCW elsewhere in chapter 16.52 RCW, but did not do so here, the result is that the trial court is prohibited from incorporating the definition of "physical injury" from chapter 9A.04 RCW. We disagree.

To provide a definition, we "consider the statute as a whole and provide such meaning to the term as is in harmony with other statutory provisions." *Heinsma*, 144 Wn.2d at 564. If necessary we may also rely on the dictionary or thesaurus when interpreting statutes. *Kintz*, 169 Wn.2d at 547. If a dictionary is a sufficient source for a definition, a Washington criminal statute referenced by the legislature elsewhere in chapter 16.52 RCW is clearly a reasonable source. In this case, we agree with the trial court that adoption of the definition of "physical injury" from RCW 9A.04.110(4)(a) is reasonable.

## II.    SUFFICIENCY OF THE EVIDENCE

Next, Robatcek argues that the trial court lacked sufficient evidence to support his conviction. We disagree.

Whether sufficient evidence supports a defendant's conviction is a question of law review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). When reviewing the sufficiency of evidence, we examine whether, viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

Here, because we affirm the trial court's application of physical injury under Title 9A RCW, to include "some pain," a rational trier of fact could have found guilt beyond a reasonable doubt. RCW 9A.04.110(4)(a). Specifically, the record shows that Robatcek admitted that he aimed and fired at Pepe intentionally in an attempt to get him to "quit barking." RP at 59. Further, undisputed testimony from Nicholas, Sheila, and Dr. Hart all prove that Robatcek's shot resulted in eye trauma and eventual removal of said eye—undisputedly a physical injury. Accordingly, we hold that the State presented sufficient evidence to support Robatcek's conviction for animal cruelty in the first degree.

III. LFOs

Next, Robatcek argues that the trial court's order requiring him to pay the VPA and DNA LFOs is unauthorized as the trial court found him indigent and the recent legislative amendments. He requests the fees be stricken from the judgment and sentence. The State concedes. We accept the State's concession.

Recent legislative changes eliminated language that made the imposition of the DNA collection fee mandatory. LAWS OF 2023, ch. 449, § 4. Similarly, RCW 7.68.035(1)(a), which imposes a VPA "for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor," was also amended, allowing waiver of the fee if the trial court finds that

"the defendant, at the time of sentencing" was indigent. LAWS OF 2023, ch. 449, § 1. The court found Robatcek indigent at the time of sentencing. Accordingly, we remand with instructions to strike the VPA and DNA collection fees in light of the recent statutory changes.

## CONCLUSION

We conclude that the trial court's application of the definition of "physical harm" from RCW 9A.04.110(4)(a) was proper and that sufficient evidence supports his conviction. Therefore, we affirm Robatcek's conviction for animal cruelty in the first degree. But we remand with instructions to strike the VPA and DNA fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Glasgow, J.

_____
Price, J.